[Crim. No. 5360.   Second Dist., Div. One.   July 19, 1955.]

THE PEOPLE, Respondent, v. HAROLD DEAN KINMAN, Appellant.

420

Matthews & Hill and John J. Hamilton for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DORAN, J.—This is an appeal from "the judgment and sentence."

Appellant was charged by information with assault by means of force likely to produce great bodily injury committed upon Irma Kinman. The jury returned a verdict of guilty and defendant was sentenced to the county jail for nine months. Mrs. Kinman was divorced from appellant in 1946.

As recited in appellant's brief, Mrs. Kinman arrived home about 4:45 p. m. as was her custom, ". . . she walked about four steps into the kitchen; Mr. Kinman walked out of dining room and turned to face her; she said 'Hello, how are you; I heard you were getting out today.' 'Then I was hit.' 'I guess his fist'; to her knowledge there was no one else present. 'He hit me and I fell down.' 'Where did he hit you?' 'Right in the face. Then I have a vague recollection of being kicked and sort of saying "Please don't do that." ' She 'must have gotten up and wandered in the hall.'

"She had not noticed anything in defendant's hands; she does not remember being struck more than one blow; she 'vaguely' remembered the kick; he tore her clothes; her eyes were bloody; she was taken to Santa Monica Emergency hospital; her head was X-rayed; she had four front upper teeth loosened and two black eyes and at trial she had a scar on bridge of nose; the nose had been cut and the doctors sewed it, and also a cut over right eye; each required two stitches; she also had bruise at base of spine about four inches in diameter. Photographs of witness, taken afterwards on April 19, are Peoples Exhibits 1 and 2; her sweater, Exhibit 3,

and dress in Exhibit 4; witness weighed about 90 pounds, is 5 feet tall; defendant weighed usually around 185 lbs., and she thinks he is about six feet one; . . .''

Also, ''. . . in the testimony of Officer Leo C. Depres, he testified defendant told him 'I saw her in there so I just punched her in the mouth.' I asked him the reason—and he said, 'Well, one of her boy friends whacked my kid around so I just kicked the hell out of her'—Again: Question by Mr. Matthews: 'Officer, in substance the defendant told you, did he not, he came home and he found out his wife's boy friend was whacking the hell out of his kid? He couldn't find the boy friend, so he took it out on his wife?' A.—'That is correct sir.' The defendant testified on this point that a playmate of his son had told defendant that 'Irma's boy friend beat Steele' (his son). 'I wound up punching her in the eye.' Officer Depres also testified he noticed a slight abrasion or laceration on the first knuckle joints of the index and middle fingers of defendant's left hand and a slight abrasion of the index finger of defendant's right hand.''

It is contended on appeal that ''The evidence is not sufficient to support the verdict.'' In this connection appellant argues, ''The turning point in this case is: Does the entire picture here show—from the nature and extent of the injuries sustained—'Great Bodily Injury.' ''

It is further argued, ''. . . that the facts here undoubtedly show what should be considered to be a case of battery inasmuch as it is quite apparent that there is no serious or permanent injury inflicted and that the Court would have been well justified in reducing the crime to assault and battery rather than the more serious felony charge.

''The evidence does not disclose exactly what force was used and the only person who was qualified to testify as to the number of blows struck has reduced the striking to one blow, and a nebulous or hazy conclusion that she might have been kicked. However, nothing positive was testified to by the complaining witness in this case.''

Respondent, on the contrary, argues that, ''. . . the jury could and did reasonably conclude that a blow and a kick delivered without warning by a man the size of the appellant to a woman the size of Mrs. Kinman, as shown by the evidence, were forces likely to produce great bodily injury to her. From the evidence that she had four loose teeth, two black eyes, two cuts requiring stitches, and a large bruise, the jury could reasonably find that the attack had in fact resulted in

great bodily injury, which finding supported their conclusion that the force which had been used was likely to produce such injury.''

■ There are many cases on the subject, for example, ''Repeatedly the courts of this state have held that one may be guilty of assault by means of force likely to produce great bodily injury although the attack is made by the use of hands or fists. (*People* v. *Hinshaw,* 194 Cal. 1 [227 P. 156]; *People* v. *Kimmerle,* 90 Cal.App. 186 [265 P. 525]; *People* v. *Blake,* 129 Cal.App. 196 [18 P.2d 399]; *People* v. *Nudo,* 38 Cal.App.2d 381, 385 [101 P.2d 162].) ■ What force is likely to produce great bodily injury is a question of fact to be determined by the jury. (*People* v. *Nudo, supra.*)'' (*People* v. *Bumbaugh,* 48 Cal.App.2d 791, 797 [120 P.2d 703].)

■ ''Whether a fist would be likely to produce such injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied.'' (*People* v. *Score,* 48 Cal.App.2d 495, 498 [120 P.2d 62].)

Section 245 of the Penal Code provides for punishment either in the penitentiary or the county jail. If the defendant is sentenced to the penitentiary, the offense is a felony, if sentenced to the county jail, a misdemeanor. Here the record is a misdemeanor conviction. ■ Whether the offense is punishable in the penitentiary or the county jail is a question for the trial court to decide.

■ That the evidence is sufficient to support the verdict there is no question. An examination of the record reveals no prejudicial errors.

The judgment is affirmed. The attempted appeal from the sentence is dismissed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 1, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 17, 1955.