[No. S067672. Feb. 1, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DANIEL SARGENT, SR., Defendant and Appellant.

## COUNSEL

K. Douglas Cummings, under appointment by the Supreme Court; and Barry A. Zimmerman for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross, Cynthia G. Besemer and Janis Shank McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BROWN, J.—In this case we determine the required mens rea for a conviction of felony child abuse based on direct infliction of unjustifiable physical pain and mental suffering. (Pen. Code,[1] § 273a, former subd. (1), now § 273a, subd. (a) (section 273a(1)).)[2] The Court of Appeal concluded criminal negligence is required. We disagree, and therefore reverse its judgment.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Section 273a was enacted in 1905 to read: "Any person who willfully causes or permits any child to suffer, or who inflicts thereon unjustifiable physical pain or mental suffering, and whoever, having the care or custody of any child, causes or permits the life or limb of such child to be endangered, or the health of such child to be injured, and any person who willfully causes or permits such child to be placed in such situation that its life or limb may be endangered, or its health likely to be injured, is guilty of a misdemeanor." (Stats. 1905, ch. 568, § 5, p. 759.) The statute was not amended until 1963, when the former misdemeanor offense was made an alternative felony/misdemeanor offense. (Stats. 1963, ch. 783, § 1, p. 1811.) In 1965, the section was divided into subdivisions (1) and (2), which were separate felony/misdemeanor and misdemeanor provisions. In addition, the language "under circumstances or conditions likely to produce great bodily harm or death" was added to new subdivision (1). (Stats. 1965, ch. 697, § 1, p. 2091.) In 1993, subdivisions (1) and (2) were redesignated subdivisions (a)(1) and (b). (Stats. 1993, ch. 1253, § 1.) In 1994, subdivisions (a)(1) and (b) were redesignated subdivisions (a) and (b). (Stats. 1994, ch. 1263, § 3.)

At the time of defendant's crime, former section 273a provided:

"(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years.

"(2) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health may be endangered, is guilty of a misdemeanor." (Stats. 1984, ch. 1423, § 2, pp. 4994-4995.)

The current version of section 273a is substantively identical. As relevant here, the sole difference between the two subdivisions is that former subdivision (1), now subdivision (a), punishable as a felony or misdemeanor, requires that the proscribed conduct occur in "circumstances or conditions likely to produce great bodily harm or death"; former subdivision (2), now subdivision (b), a misdemeanor, has no such requirement.

## I. Facts and Procedural Background

Michael Sargent, Jr. (Michael), defendant's son, was born on March 24, 1993, three months premature. He weighed two pounds, four ounces, and spent the first three months of his life in the hospital. By August 19, 1993, he was the equivalent of a four- to six-week-old infant in terms of neck muscle development. On that date, Marysville Fire Department personnel and a paramedic responding to a "911" call found Michael in a deep coma and close to death on defendant's apartment floor. He was not breathing, had no heartbeat, no eye or motor movement, and no response to verbal stimuli. There was bright red blood coming from his nose and mouth.

Michael was ultimately airlifted to the University of California at Davis Medical Center. While Michael's subsequent condition was not made clear at trial, it appears he survived and was released from the hospital on September 3, 1993.

Defendant's explanation of Michael's injuries varied. On August 19, 1993, defendant told a neighbor, paramedic, and hospital personnel Michael had rolled off the couch and fallen 18 to 20 inches to a carpeted floor. On August 24, 1993, defendant was interviewed by the police. He denied dropping Michael or losing his temper.

On August 25, 1993, defendant was again interviewed by the police. He stated he had dropped Michael while throwing him up in the air to stop him from crying, causing Michael to strike his head on the linoleum kitchen floor. The interviewing officers told defendant a consulting physician had concluded Michael was a victim of shaken baby syndrome. Defendant initially denied Michael was ever shaken. He then changed his story a third time. He said he and Michael's mother had an argument, and she dropped defendant and Michael off at the house. Defendant carried Michael in his car seat into the house. The infant was crying inconsolably. Defendant started to try to make a bottle for Michael. When Michael continued crying, defendant shook him front to back as Michael sat in his car seat. Defendant then returned to making the bottle. When Michael continued to cry, and refused a pacifier, "that's when I was shaking him more hard." Defendant shook Michael four or five times, causing the infant's head to lose contact with the car seat "a couple of times." Michael stopped crying. He "had this weird look in his eyes . . . like [he] was going to sleep you know like he was falling or something." When defendant picked him up, Michael's back bowed. His eyes closed, and he appeared to have difficulty breathing.

Defendant was charged with felony child abuse (§ 273a(1)), alleged to be a serious felony because it involved the personal infliction of great bodily

injury. (§§ 667, subd. (a), 1192.7, subd. (c)(8).) It was further alleged that defendant had suffered a prior serious felony conviction for burglary (§§ 459, 667, subd. (a); 1192.7, subd. (c)(18)), and served two prior prison terms (§ 667.5, subd. (b)).

At trial, Dr. John McCann, a pediatrician and director of the Davis Medical Center's child protection program, testified as a medical expert on child abuse for the prosecution. When Michael arrived at the Davis Medical Center he was sedated and consequently paralyzed because he appeared to be having seizures. No bruises or other external trauma, except for swelling around the eyes, were observed. A CAT (computerized axial tomography) scan revealed bilateral subdural hematomas, or blood over the surface of Michael's brain on both sides behind his ears. In addition, his brain was swollen. During his examination of Michael, Dr. McCann observed flame-shaped retinal hemorrhages in both eyes.

Based on all of this information, Dr. McCann opined Michael was a victim of shaken baby syndrome. Seventy to seventy-five percent of the children injured by shaking suffer either severe long-term disabling injury, such as blindness, seizures, and difficulty walking or talking, or death. McCann stated that shaking Michael was a circumstance likely to result in great bodily injury or death. For a fall to have caused the injuries sustained, Michael would have to fall out a second story window, not off the couch or from his father's arms.

Dr. Todd Brandtman testified as a defense medical expert. He was an emergency room physician who had neither treated nor examined Michael. He did not have expertise in child abuse. He testified Michael's injuries could have resulted from being dropped, and that photographs of Michael taken two days after he left the hospital showed a swollen spot on the back of his head.

Tapes of defendant's interviews with the police were played for the jury. Defendant testified his admission of shaking the infant was false and his prior account of dropping him was accurate. He confessed to shaking the infant because that was what the interviewing officers wanted to hear and because the officers and other government agents had told him they wanted to keep the family together and did not want him to get into trouble.

Michael's mother testified she had seen defendant throwing Michael up in the air on other occasions and had gotten angry at him for doing so. On August 19, 1993, she heard a thump and saw the infant crying, but concluded he had not been injured by his fall and left the apartment. Several

other family members and friends testified they saw a bump on the back of Michael's head at various times following his discharge from the hospital.

The jury was instructed that it could find defendant guilty of violating section 273a(1) based on general criminal intent if it found defendant willfully inflicted unjustifiable physical pain or mental suffering on Michael. In addition, the jury was required to find the infliction occurred under circumstances or conditions likely to produce great bodily harm or death. The jury was further instructed that permitting a child to suffer unjustifiable physical pain or mental suffering, or when having the care or custody of a child permitting the child to be injured, or permitting the child to be placed in a situation that endangers the child's person or health in violation of section 273a(1) required criminal negligence. Both general criminal intent and criminal negligence were defined.[3]

The prosecutor argued that the jury could conclude defendant committed child abuse whether it found defendant had shaken Michael with general

[3]The jury was instructed in the language of CALJIC Nos. 1.20, 3.30, 3.36, 4.45, 9.37: "In the crime charged in Count I of the Information and in the lesser [included] crime there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent, it's not necessary that there exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime he or she is acting with general criminal intent[] [e]ven though he or she may not know that the act or conduct is unlawful.

"When a person commits an act or makes an omission through misfortune or by accident under circumstances that show neither criminal intent nor purpose nor criminal negligence, he or she does not thereby commit a crime.

"The Defendant is accused in Count I of the Information of having violated Section 273(a)(1) of the Penal Code, a crime. Every person who under circumstances or conditions likely to produce great bodily harm or death, one, willfully inflicts unjustifiable physical pain or mental suffering on a child or, two, willfully causes or as a result of criminal negligence permits a child to suffer unjustifiable physical pain or mental suffering or, three, has care or custody of a child and, A, willfully causes or . . . as a result of criminal negligence, permits the child to be injured or, B, willfully causes or as a result of criminal negligence permits the child to be placed in a situation that endangers the child's person or health is guilty of a violation of Section 273(a)(1) of the Penal Code, a crime. The word 'willfully' as used in this instruction means with knowledge of the consequences or purposefully.

"In the crime charged in the Information there must exist a union or joint operation of act or conduct and either general criminal intent or criminal negligence. To establish general criminal intent, it's not necessary that there should exist an intent to violate the law. A person who intentionally does that which the law declares to be a crime is acting with general criminal intent even though he may not know that such act or conduct is unlawful.

"Unjustifiable physical pain or mental suffering is the infliction of pain or suffering which cannot be defended or excused under the circumstances as reasonable, both as to necessity and to degree.

"Great bodily harm refers to significant or substantial injury and does not refer to trivial or insignificant injury. If a child is placed in a situation likely to produce great bodily harm or death it is not necessary that . . . actual bodily injury occur in order to constitute the offense. However, if such bodily injury does occur, its nature and extent are to be considered in

criminal intent, or dropped Michael with criminal negligence, and that this crime was a felony if it was committed under circumstances or conditions likely to produce great bodily harm or death.

The jury found defendant guilty of a violation of section 273a(1). The verdict did not indicate which branch of section 273a(1) the jury found defendant had violated, that is, whether defendant had directly inflicted the abuse by shaking Michael, or had been criminally negligent in dropping him. In a bifurcated court trial, the enhancement allegations were found true. The court sentenced defendant to the upper term of six years for the felony child abuse count, with a consecutive five-year enhancement.[4]

The Court of Appeal, with one justice dissenting, concluded criminal negligence must be demonstrated to convict a defendant of infliction of unjustifiable physical pain or mental suffering, and the evidence did not support the inference that defendant was criminally negligent. The court relied on cases involving other branches of section 273a(1) that generally required criminal negligence. It disagreed with *People* v. *Atkins* (1975) 53 Cal.App.3d 348 [125 Cal.Rptr. 855] and *People* v. *Wright* (1976) 60 Cal.App.3d 6 [131 Cal.Rptr. 311], disapproved on other grounds in *People* v. *Wells* (1996) 12 Cal.4th 979, 988 [50 Cal.Rptr.2d 699, 911 P.2d 1374], concluding their interpretation of section 273a(1) "reads out of the statute

connection with all of the evidence in determining whether the circumstances were such as were likely to produce great bodily harm or death.

"In order to prove such a crime each of the following elements must be proved: A person willfully inflicted unjustifiable physical pain or mental suffering on a child or a person willfully causes or as a result of criminal negligence permitted a child to suffer unjustifiable physical pain or mental suffering or, one, a person having care or custody of a child, A, willfully caused or as a result of criminal negligence permitted the child to be injured or, B, willfully caused or as a result of criminal negligence permitted the child to be placed in a situation that endangered the child's person or health. And, two, such conduct occurs under circumstances likely to produce great bodily harm or death.

"Criminal negligence means conduct which is more than ordinary negligence. Ordinary negligence is the failure to exercise ordinary or reasonable care. Criminal negligence refers to a negligent act which is aggravated, reckless and gross and which is such a departure from that which would be the conduct of an ordinarily, prudent, careful person under the same circumstances as to be contrary to a proper regard for human life or to constitute indifference to the consequences of such act. The facts must be such that the consequences of the negligent act could reasonably have been foreseen and it must appear that the danger to human life was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or grossly negligent act."

"The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or make the omission in question. The word 'willfully' does not require any intent to violate the law or to injure another or to acquire any advantage."

[4]It is unclear from the record whether defendant was sentenced under section 667.5 or section 667, subdivision (a).

the element which embodies criminal negligence, the requirement that the culpable conduct occur in circumstances likely to produce great bodily harm or death."

The court further concluded that "[t]here is nothing in the record from which it can be inferred that the defendant knew or should have known of the risk of great bodily harm or death from shaking the infant, e.g., attendance at a prenatal education session concerning this risk. . . . Nor can we take judicial notice that such a risk is generally known. . . . [¶] . . . The defendant denied knowledge of the syndrome and the record is devoid of evidence showing that he knew or should have known of the syndrome. Accordingly, there is no basis for a finding that he knew or should have known that great bodily injury or death is likely to result from shaking his baby."

Finally, the court concluded that "defendant was convicted under the second branch of section [273a(1)], the 'inflict[ion of] . . . unjustifiable physical pain or mental suffering' upon a child 'under circumstances or conditions likely to produce great bodily harm or death . . . .' " The prosecution was not predicated on criminal negligence in dropping Michael. While defendant testified "he dropped the child and that is how the child was injured . . . there was no evidence of fracture or bruises which would support that theory and the prosecution introduced extensive evidence to refute the claim. Given that strong evidence supporting the prosecution's theory of the mechanism of injury, it is entirely unlikely that the conviction was predicated upon dropping the baby." Rather, "there is far more than a 'reasonable probability' that the jury in fact found the defendant guilty solely on the shaken baby syndrome theory. Accordingly, we conclude that the defendant's felony conviction cannot be affirmed." The court modified the judgment to a conviction of violation of section 273a, former subdivision (2), a misdemeanor, and remanded to the trial court for resentencing. The judgment was otherwise affirmed. The Attorney General's petition for rehearing was denied.

We granted the Attorney General's petition for review.

## II. Discussion

### A. *Background*

#### 1. *General Intent and Criminal Negligence*

■ Section 20 provides, "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

(See also § 26, subd. Five [persons incapable of committing crime include those "who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence"].) Intent can be either general or specific. "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law.

Criminal negligence is " 'aggravated, culpable, gross, or reckless, that is, . . . such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life . . . .' " (*People* v. *Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926].) "Under the criminal negligence standard, knowledge of the risk is determined by an objective test: '[I]f a reasonable person in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.' " (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 574 [20 Cal.Rptr.2d 341, 853 P.2d 507], italics omitted; *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 136 [253 Cal.Rptr. 1, 763 P.2d 852] ["criminal negligence must be evaluated objectively"].) Under section 20, criminal negligence "may be sufficient to make an act a criminal offense, without a criminal intent." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 113, p. 133.)

### 2. *Section 273a(1)*

Section 273a(1) is an omnibus statute that proscribes essentially four branches of conduct. At the time of defendant's crimes, and in substantively identical form currently, it provided: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or [4] willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years." (*Ibid.*)

We have observed that violation of section 273a(1) "can occur in a wide variety of situations: the definition broadly includes both active and

passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." (*People* v. *Smith* (1984) 35 Cal.3d 798, 806 [201 Cal.Rptr. 311, 678 P.2d 886].) We have also observed, however, that "[t]wo threshold considerations . . . govern all types of conduct prohibited by this law: first, the conduct must be willful; second, it must be committed 'under circumstances or conditions likely to produce great bodily harm or death.' (§ 273a, subd. (1).) Absent either of these elements, there can be no violation of the statute." (*Ibid.*) Section 273a(1) is "intended to protect a child from an abusive situation in which the probability of serious injury is great." (*People* v. *Jaramillo* (1979) 98 Cal.App.3d 830, 835 [159 Cal.Rptr. 771].) "[T]here is no requirement that the actual result be great bodily injury." (*Ibid.*)

We have not previously addressed the question of the appropriate mens rea for direct infliction of abuse cases under section 273a.[5] In *Walker* v. *Superior Court, supra,* 47 Cal.3d at page 135, we did not dispute the defendant's broad statement that section 273a requires criminal negligence. However, in *Walker*, a Christian Science parent declined to obtain medical treatment for her four-year-old child suffering from meningitis, who eventually died. (47 Cal.3d at pp. 118-119.) Hence, that case involved indirect abuse or child endangerment, not direct infliction of abuse. ▮ ▮ ▮ Indeed, in *People* v. *Heitzman* (1994) 9 Cal.4th 189 [37 Cal.Rptr.2d 236, 886 P.2d 1229], when interpreting section 368,[6] which is virtually identical to section 273a(1), we twice made it clear that the case involved a failure to act, not active abuse. (9 Cal.4th at p. 197, fn. 6; *id.* at p. 205, fn. 14.)

In *People* v. *Peabody* (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780], the defendant's four-month-old infant suffered multiple nonaccidental fractures. (*Id.* at pp. 45-46.) There was no evidence that the defendant, as opposed to the baby's father, had inflicted the injuries on her child. (*Id.* at p. 46.) Thus, "the conviction can stand only under that portion of the statute which

---

[5]Because in this case we address only the mens rea required for direct infliction of unjustifiable physical pain or mental suffering, the issue of what mens rea is required for the other three branches, discussed in Justice Mosk's concurring opinion, is not before us.

[6]At the time of defendant's crime, section 368, subdivision (a), provided: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult, with knowledge that he or she is an elder or a dependent adult, to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation such that his or her person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for two, three, or four years."

Section 368 was patterned on and is virtually identical to section 273a. Cases interpreting one section are therefore appropriately used to interpret the other. (*People* v. *Heitzman, supra,* 9 Cal.4th at pp. 204-205.)

proscribes a person from wilfully causing or permitting a child to be placed in a health endangering situation under circumstances likely to produce great bodily harm or death." (*Ibid.*, italics omitted.) The court held that under these circumstances, section 273a(1) "requires proof of criminal negligence." (46 Cal.App.3d at p. 48.)

Prior to the Third District Court of Appeal's decision in this case, two prior decisions of that court had rejected the argument that criminal negligence is an element of section 273a(1) when the defendant directly inflicts unjustifiable physical pain or mental suffering. In *People* v. *Atkins, supra*, 53 Cal.App.3d 348, a two-and-a-half-year-old child was beaten to death. (*Id.* at pp. 353-355.) The mother was charged with manslaughter, inflicting corporal punishment or injury on a child (§ 273d), and endangering the person and health of a child (§ 273a(1)). (53 Cal.App.3d at p. 352.) She was convicted of involuntary manslaughter, battery, which was a lesser included misdemeanor offense within the corporal punishment felony charge, and violation of section 273a(1). (53 Cal.App.3d at p. 352.)

On appeal, the mother contended the trial court erred in failing to instruct, sua sponte, that a conviction of endangering the person and health of a child under section 273a(1) "required a finding by the jury of 'criminal negligence' and 'mere inattention or mistake in judgment [was] insufficient for such a conviction.' " (*People* v. *Atkins, supra*, 53 Cal.App.3d at p. 361.) The court concluded that no such instruction was required. It noted, "The statute requires, in subdivision (1), that for a person to be guilty of the offense, he wilfully cause or permit injury to a child." (*Ibid.*) Unlike *People* v. *Peabody, supra*, 46 Cal.App.3d 43, on which the mother relied, the evidence here "pointed strongly to direct infliction of physical pain and mental suffering on the child by the defendant herself. An instruction on 'criminal negligence' with its attendant elements of foreseeability and the like, would be entirely inappropriate in such a case." (*People* v. *Atkins, supra*, 53 Cal.App.3d at p. 361.)

Similarly, in *People* v. *Wright, supra*, 60 Cal.App.3d 6, the defendant was convicted of involuntary manslaughter in the beating death of his 29-month-old daughter. (*Id.* at p. 9.) On appeal, he asserted that the trial court erred in failing sua sponte to give an instruction regarding "involuntary manslaughter of the criminal negligence variety." (*Id.* at p. 12.) The Court of Appeal rejected this contention, stating here, unlike *Peabody*, "the defendant was charged with personally injuring the child and not with wilfully permitting its injury by another. The *Peabody* [requirement] for an instruction on criminal negligence is inappropriate where the evidence points to direct infliction of injury by the defendant." (*Id.* at p. 14; see *Iiams* v. *Superior*

*Court* (1965) 236 Cal.App.2d 80, 82-83 [45 Cal.Rptr. 627] [Proof of criminal agency "required evidence from which it might have been concluded that the injuries resulted from the intentional act of a human being. The offenses charged against [the defendant] are not directed toward an accidental or negligently caused condition."]; 2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Decency and Morals, § 840(3), p. 957 ["If there is no evidence that a defendant himself inflicted the injuries on the child, P.C. 273a(1) requires proof of criminal negligence." (Italics omitted.)].)

In other direct infliction of abuse cases, there is no discussion of mens rea, and, in particular, no indication that a criminal negligence standard was applied. (See, e.g., *People* v. *Smith, supra*, 35 Cal.3d at pp. 801-812, 809-810; *People* v. *Jaramillo, supra*, 98 Cal.App.3d at p. 835 [the defendant struck young daughters with stick]; *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 716, 718 [140 Cal.Rptr. 299] [substantial evidence that the defendant deliberately inflicted severe injuries on child]; *People* v. *Fuentes* (1967) 253 Cal.App.2d 969, 973-974 [61 Cal.Rptr. 768] [child killed by concentrated blunt force].)

Moreover, other than the Court of Appeal opinion in this case, those cases which impose a criminal negligence requirement involve indirect abuse, such as failing to seek medical treatment, child endangerment, or willfully permitting situations that imperil children. (See, e.g., *Walker* v. *Superior Court, supra*, 47 Cal.3d at pp. 118, 135 [failure to obtain medical care resulting in 4-year-old's death]; *People* v. *Hansen* (1997) 59 Cal.App.4th 473, 476-478 [68 Cal.Rptr.2d 897] [34-year-old man encouraged 14-year-old neighbor to play fatal game of Russian roulette]; *People* v. *Deskin* (1992) 10 Cal.App.4th 1397, 1399, 1402 [13 Cal.Rptr.2d 391] [unspecified misdemeanor child endangerment]; *People* v. *Lee* (1991) 234 Cal.App.3d 1214, 1217-1218, 1221 [286 Cal.Rptr. 117] [mother convicted of second degree murder and felony child endangerment for death of emaciated and dehydrated infant]; *People* v. *Rippberger* (1991) 231 Cal.App.3d 1667, 1673, 1682 [283 Cal.Rptr. 111] [failure to seek medical treatment for child suffering from meningitis]; *People* v. *Odom* (1991) 226 Cal.App.3d 1028, 1031, 1032 [277 Cal.Rptr. 265] [children living in squalor, and surrounded by highly dangerous drug lab and weapons]; *People* v. *Pointer* (1984) 151 Cal.App.3d 1128, 1131-1134 [199 Cal.Rptr. 357] [failure to provide proper nutrition and medical care]; *Cline* v. *Superior Court* (1982) 135 Cal.App.3d 943, 945-946, 948-949 [185 Cal.Rptr. 787] [father endangered toddler by throwing him into a car driven by another and then encouraging or knowingly permitting dangerous ride].)

However, a number of cases involving indirect abuse and child endangerment broadly state, as did *Walker* v. *Superior Court, supra*, 47 Cal.3d at page

135, that section 273a is a criminal negligence statute. In each case, the statement is supported by citation to other endangerment or indirect abuse cases. (See, e.g., *People* v. *Deskin, supra*, 10 Cal.App.4th at p. 1402 [relying on *People* v. *Superior Court (Holvey)* (1988) 205 Cal.App.3d 51 [252 Cal.Rptr. 335], disapproved in *People* v. *Heitzman, supra*, 9 Cal.4th at p. 209, fn. 17 (interpreting section 368)]; *People* v. *Lee, supra,* 234 Cal.App.3d at p. 1221 [relying on *People* v. *Peabody, supra*, 46 Cal.App.3d 43, and *People* v. *Hernandez* (1980) 111 Cal.App.3d 888, 895 [168 Cal.Rptr. 898]]; *People* v. *Rippberger, supra*, 231 Cal.App.3d at p. 1682 [relying on *People* v. *Pointer, supra*, 151 Cal.App.3d 1128, and *People* v. *Peabody, supra*, 46 Cal.App.3d 43]; *People* v. *Odom, supra*, 226 Cal.App.3d at p. 1032 [relying on *Walker* v. *Superior Court, supra*, 47 Cal.3d 112, and *People* v. *Peabody, supra*, 46 Cal.App.3d 43]; *People* v. *Pointer, supra*, 151 Cal.App.3d at p. 1134 [relying on *People* v. *Peabody, supra*, 46 Cal.App.3d 43].)

B. *Appropriate Mens Rea When Child Abuse Directly Inflicted*

■ We first consider whether a violation of section 273a(1) based on direct infliction of unjustifiable physical pain or mental suffering requires proof of general criminal intent or criminal negligence. As noted above, the Court of Appeal concluded that criminal negligence is required; defendant urges us to adopt this view. The Attorney General argues that only general criminal intent is required.

We begin with the language of the statute. The language "inflicts [on a child] unjustifiable physical pain or mental suffering" is most readily interpreted as requiring general criminal intent. That is, the statute describes "a particular act, without reference to intent to do a further act or achieve a future consequence." (*People* v. *Hood, supra*, 1 Cal.3d at pp. 456-457.)

Moreover, the language of section 273a(1) is similar to that of section 273d, which proscribes corporal punishment or child beating.[7] Indeed, sections 273a(1) and 273d have been described as "related statute[s]." (*People* v. *Stewart* (1961) 188 Cal.App.2d 88, 91 [10 Cal.Rptr. 217] [relying on section 273a case to interpret section 273d]; see also *People* v. *Smith, supra*, 35 Cal.3d at p. 801 [defendant convicted of both sections 273a(1) and 273d]; *People* v. *Jackson* (1971) 18 Cal.App.3d 504, 505 [95 Cal.Rptr. 919] [same]; *People* v. *Mills* (1991) 1 Cal.App.4th 898, 902 [2 Cal.Rptr.2d 614] [same].) Section 273d has been interpreted as a general intent statute. (*People* v. *Atkins, supra,* 53 Cal.App.3d at p. 358 ["[t]here need not be found a

---

[7]Section 273d, subdivision (a), provides in relevant part: "Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition is guilty of a felony . . . ."

deliberate intent to cause a traumatic condition, but only the more general intent to inflict upon a child any cruel or inhuman corporal punishment or injury"]; see *People* v. *Mills, supra,* 1 Cal.4th at p. 921 [corpus delicti of offense that child was injured and that injury was willful and intentional proven independent of the defendant's admission]; *People* v. *Lawrence* (1956) 141 Cal.App.2d 630, 633 [297 P.2d 144] [When father struck and burned his daughter, "The corpus delicti was established when it was shown that the corporal injury was inflicted upon the child by the defendant and the circumstances and injuries to the child demonstrated that such injuries were deliberately and intentionally inflicted upon her."]; *People* v. *Gutierrez* (1986) 180 Cal.App.3d 1076, 1079, 1080 [225 Cal.Rptr. 885] [defendant conceded section 273d general intent crime].) Furthermore, battery (§ 242), which requires general criminal intent, is a lesser included offense of section 273d. (*People* v. *Atkins, supra,* 53 Cal.App.3d at p. 352; *People* v. *Stewart, supra,* 188 Cal.App.2d at p. 90.) Given the similarities between section 273a(1) and section 273d, the mens rea element should be the same.

The similarities between felony child abuse involving direct infliction of unjustifiable physical pain or mental suffering and assault (§ 240) and assault with a deadly weapon (§ 245) also support the application of general criminal intent to section 273a(1). (*People* v. *Smith, supra,* 35 Cal.3d at p. 807 ["The elements of section 245 and the offense here [violation of section 273a(1)] are strikingly similar; the principal difference is that the assault prohibited by section 273a is committed on a child." (Fn. omitted.)].) Assault and assault with a deadly weapon are general intent crimes. (*People* v. *Colantuono* (1994) 7 Cal.4th 206, 214-215, 218, 219, 221 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

In addition, section 273ab,[8] which proscribes assault resulting in a child's death, expressly refers to assault "by means of force *that to a reasonable person* would be likely to produce great bodily injury . . . ." (Italics added.) Thus, when the Legislature chooses to create a reasonable person standard, it knows how to do so.

Defendant asserts that section 273a(1) and section 273d differ significantly because section 273a(1), but not section 273d, requires that the culpable conduct occur "under circumstances or conditions likely to produce great bodily harm or death." "Thus, while only general criminal intent may apply to the actual infliction element, criminal negligence applies to the

[8]Section 273ab provides in relevant part: "Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 25 years to life."

condition or circumstances element of the offense." Defendant likewise asserts that the relevant scienter in this case is "the scienter required with respect to the 'circumstances or conditions likely to produce great bodily harm or death,' not the scienter required with respect to the actual conduct or omission."

There appears to be, however, no basis for concluding that the appropriate mens rea for direct infliction of unjustifiable physical pain or mental suffering is contained in the language "under circumstances or conditions likely to produce great bodily harm or death." Section 273a does not provide that a defendant must "know or reasonably should know that his or her actions occur under circumstances or conditions likely to produce great bodily harm or death." Rather, the statute proscribes the infliction of unjustifiable physical pain or mental suffering on a child. Whether that infliction is "under circumstances or conditions likely to produce great bodily harm or death" is a question for the trier of fact. In this case for example, the jury reasonably would have considered Michael's tender age and fragile physical development, the degree of force used by defendant in violently shaking him on two different occasions, and the likelihood of great bodily harm or death created by that force as evidenced by the medical testimony and the injuries sustained. By contrast, if Michael had been a 17-year-old varsity linebacker, those facts would also have been "circumstances or conditions" the jury would consider.

In this manner, section 273a(1) is similar to that portion of section 245, subdivision (a)(1), which proscribes "assault . . . by any means of force likely to produce great bodily injury." Numerous cases have held that whether the force used by the defendant was likely to produce great bodily injury is a question for the trier of fact to decide. (*People* v. *Armstrong* (1992) 8 Cal.App.4th 1060, 1066 [10 Cal.Rptr.2d 839] [" '[T]he question of whether or not the force used was such as to have been likely to produce great bodily injury, is one of fact for the determination of the jury based on all the evidence, including but not limited to the injury inflicted.' "]; *People* v. *Duke* (1985) 174 Cal.App.3d 296, 303 [219 Cal.Rptr. 873] [reasonable jury could not find beyond a reasonable doubt that headlock on victim constituted force likely to produce great bodily injury]; *People* v. *Kinman* (1955) 134 Cal.App.2d 419, 422 [286 P.2d 28] [" 'Whether a fist would be likely to produce such injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied.' "]; *People* v. *Pullins* (1950) 95 Cal.App.2d 902, 904 [214 P.2d 436] ["Whether the force applied and the means used were calculated to 'produce great bodily injury,' is a question for the trier of fact."]; *People* v. *Bumbaugh* (1941) 48 Cal.App.2d 791, 797 [120 P.2d 703] ["In view of the

injuries sustained by the complainant, as well as the manner of the assault made upon her, the jury was authorized to conclude that the manner of as well as the means used to perpetrate the attack constituted" assault by means of force likely to produce great bodily injury.]; see 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against the Person, § 419, p. 481 ["where the blows are serious, but still leave a question of fact as to the character of the force used, the defendant is entitled to an instruction on the included offense of simple assault"]; see also *People* v. *Martinez* (1973) 31 Cal.App.3d 355, 359 [107 Cal.Rptr. 284] ["It is now settled that assault with force likely to produce great bodily injury, is a general intent crime rather than a specific intent crime."].) Moreover, similar language in other penal statutes has not precluded them from being interpreted as general criminal intent statutes. (See *People* v. *Carter* (1998) 60 Cal.App.4th 752, 755-756 [70 Cal.Rptr.2d 569] [Section 12022.7, subdivision (d), which provides, "Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission or attempted commission of a felony," is a general intent statute.]; *People* v. *Gonzales* (1994) 29 Cal.App.4th 1684, 1691, 1695, 1698 [35 Cal.Rptr.2d 450], called into doubt on other grounds in *People* v. *Reed* (1996) 13 Cal.4th 217, 229 [52 Cal.Rptr.2d 106, 914 P.2d 184] [Section 1192.7, subdivision (c)(8), which deems "serious" "any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice," is a general intent statute.].)

The scienter for any crime is inextricably linked to the proscribed act or omission. (See § 20 ["In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."].) The actus reus for section 273a(1) is infliction of unjustifiable physical pain or mental suffering on a child. Hence, the scienter requirement applies to such an act. There is no separate scienter which attaches to the phrase "circumstances or conditions likely to produce great bodily harm or death."

We note this inquiry, as a practical matter, will in most cases not differ significantly from the imposition of a criminal negligence mens rea element into the language "under circumstances or conditions likely to produce great bodily harm or death." Thus in this case, while defendant denied any awareness that his actions were likely to harm Michael, any reasonable person would recognize that shaking a four-and-a-half-month-old infant, who had been born three months prematurely and had the neck development of a four- to six-week-old, with the force equivalent to dropping him out of a second story window, was a circumstance or condition likely to result in great bodily harm or death.

As Presiding Justice Puglia observed in his dissent in the Court of Appeal, section 273a(1) is not unlike other criminal statutes that gauge the precise

measure of the defendant's culpability for an intentional act by matters extrinsic to the intent element of the crime. The actor may neither anticipate nor have any particular intent or knowledge with respect to these extrinsic matters. For example, a thief unaware the property stolen is worth more than $400 has no defense against conviction of grand theft because of ignorance of the value of the property. (See §§ 487, 488.) Nor may a burglar, unaware the structure entered is inhabited, avoid conviction of first degree burglary on the basis of such ignorance. (§§ 459, 460.) Thus the scienter required for felony and misdemeanor theft is precisely the same. So also is the scienter required for first degree burglary and the lesser crime of second degree burglary.

Such is the case with felony child abuse under the second branch of section 273a(1). The scienter required for both section 273a(1) and section 273a, former subdivision (2) (now section 273a, subdivision (b)) violations is the same. The reference to the infliction of unjustifiable physical pain or mental suffering occurring "under circumstances or conditions likely to produce great bodily harm or death" in subdivision (1) simply states the context in which the subdivision applies. (See *People* v. *Carter, supra,* 60 Cal.App.4th at p. 755 ["reference to domestic violence in [section 12022.7,] subdivision (d) was designed to describe the context in which the subdivision applies, not the intent requirement needed under that provision"].) It is for the trier of fact to determine whether the act was done "under circumstances or conditions likely to produce great bodily harm or death," i.e., under conditions "in which the probability of serious injury is great." (§ 273a(1); *People* v. *Jaramillo, supra,* 98 Cal.App.3d at p. 835.) If so, the crime is punishable as a felony; if not, solely as a misdemeanor. (*People* v. *Deskin, supra,* 10 Cal.App.4th at p. 1401.)

Defendant recognizes that "In cases where a person brutally beats a child, it appears absurd to engage in[] an inquiry as to whether an ordinary prudent person would have been aware of the risk of serious bodily harm or death." However, there is nothing intrinsically distinct about the act of violently shaking a vulnerable infant that separates it from other methods of direct child abuse.

Nor, contrary to defendant's assertion, will section 273a(1) be tantamount to a strict liability crime if we do not conclude criminal negligence is a required element of the statute. ■ Generally speaking, a strict liability offense is one which dispenses with a mens rea, scienter, or wrongful intent element. (See *People* v. *Simon* (1995) 9 Cal.4th 493, 519 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) Felony child abuse requires a mens rea: the defendant must willfully inflict unjustifiable physical pain or mental suffering on a child.

At oral argument, defendant's counsel asserted that concluding the second branch of section 273a(1) has a general criminal intent mens rea would result in parents being prosecuted for shaking a child or slapping it on the back to save it from choking. However, shaking or slapping a choking child, whatever physical pain or mental suffering that may involve, is justified. Section 273a(1) sanctions only the infliction of *unjustifiable* physical pain or mental suffering.

 In sum, we conclude that when the conduct at issue involves the direct infliction of unjustifiable physical pain or mental suffering on a child, criminal negligence is not an element of the offense. Rather, the defendant must have a mens rea of general criminal intent to commit the proscribed act. In addition, the trier of fact must determine whether the infliction of the unjustifiable physical pain or mental suffering on a child was under circumstances or conditions likely to produce great bodily harm or death. If so, the crime is punishable as a felony. If not, it is punishable solely as a misdemeanor.

In light of this conclusion, there is no need to address whether the Court of Appeal properly modified the judgment to reflect a conviction for misdemeanor child abuse without giving the prosecution an opportunity to retry defendant.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.**—I concur fully in the judgment, which reverses the judgment of the Court of Appeal insofar as it modified the judgment of the superior court convicting appellant, on a jury's verdict, of felony child abuse to one convicting him of misdemeanor child abuse.

I also concur generally in the opinion of the court prepared by Justice Brown.

I write separately to present my own analysis. I do so in order to explicate felony child abuse—a task that is greatly needed in light of the divergent views expressed by the majority and by the dissenting justice in the Court of Appeal, which reflect similarly divergent views in reported decisions generally.

Felony child abuse—which, strictly speaking, is an alternative felony/ misdemeanor offense—is defined by statute as presently set out in Penal Code section 273a, subdivision (a): "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered," is guilty, alternatively, of a felony or a misdemeanor.

Misdemeanor child abuse is defined by statute as presently set out in Penal Code section 273a, subdivision (b): "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."

It is clear at first glance how felony child abuse differs from its misdemeanor counterpart. The felony requires that the "circumstances or conditions" (Pen. Code, § 273a, subd. (a)) establishing the "context" of the perpetrator's conduct and mental state (*People* v. *Carter* (1998) 60 Cal.App.4th 752, 755 [70 Cal.Rptr.2d 569]) must be "likely to produce great bodily harm or death" (Pen. Code, § 273a, subd. (a)). The misdemeanor, contrariwise, requires that such circumstances or conditions must *not* be likely to do so. (*Id.*, § 273a, subd. (b).)

It is not as clear, however, what felony child abuse requires concerning the perpetrator's conduct and mental state in addition to context.

Cleaving to the syntax of the statutory language, we articulate its clauses thus: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [i] willfully [a] causes or permits any child to suffer, or [b] inflicts thereon[,] unjustifiable physical pain or mental suffering, or [ii] having the care or custody of any child, [a] willfully causes or permits the person or health of that child to be injured, or [b] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered," may be guilty of a felony. (Pen. Code, § 273a, subd. (a), brackets and bracketed material added.)

So articulating the clauses of the statutory language, we discern what have been referred to as four "branches," which are separate but not necessarily independent:

Under the first branch, a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he "willfully causes or permits any child to suffer . . . unjustifiable physical pain or mental suffering . . . ." (Pen. Code, § 273a, subd. (a).)[1] Crucial for present purposes is the adverb "willfully." In the setting of the statutory language, he must, at least, *intentionally* commit an act or omission that happens to result in a child "suffer[ing] . . . unjustifiable physical pain or mental suffering." He must do more as well. That is to say, he must "cause[] or permit[]" the child "to suffer . . . unjustifiable physical pain or mental suffering" *for the purpose of bringing about, or allowing, such a result*. The reason is this: The adverb "willfully" modifies the verbs "causes" and "permits"; the object of those verbs is not an act or omission that happens to result in the child "suffer[ing] . . . unjustifiable physical pain or mental suffering," but rather that very result itself. (Cf. *People* v. *Gorshen* (1959) 51 Cal.2d 716, 730 [336 P.2d 492], disapproved on another point, *People* v. *Wetmore* (1978) 22 Cal.3d 318, 327, fn. 7 [149 Cal.Rptr. 265, 583 P.2d 1308] [holding that to kill "willfully" within the meaning of Pen. Code, § 189, means to act for the purpose of bringing about death].)[2]

Under the second branch—which is of particular concern here—a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he "willfully . . . inflicts . . . unjustifiable physical pain or mental suffering" on "any child." (Pen. Code, § 273a, subd. (a).)[3] As explained above, he must, at least, intentionally commit an act that "inflicts" such "unjustifiable physical pain or mental

---

[1]It might perhaps be argued that a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he "willfully causes or permits any child to suffer" *simpliciter* (Pen. Code, § 273a, subd. (a)), whether or not what the child suffers amounts to "unjustifiable physical pain or mental suffering" (*ibid.*). Such an argument would be based on the punctuation of the clause, "willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering," specifically, on the presence of a comma after "suffer," and the absence of a comma after "thereon." It would prove unpersuasive. Punctuation is not necessarily controlling. (E.g., *French* v. *Teschemaker et als.* (1864) 24 Cal. 518, 553-554.) In any event, the punctuation that does not appear to the eye in the clause in question sounds in the ear. A paired comma is naturally inserted after "thereon," which bears emphasis as an adverb substituting for the phrase, "on any child"—to read thus, "willfully causes or permits any child to suffer, or inflicts *on any child,* unjustifiable physical pain or mental suffering."

[2]Penal Code section 7, subdivision 1, expressly defines "willfully," with regard to an act or omission, as a "purpose or willingness to commit" such act or omission. It thereby impliedly defines "willfully," with regard to a result, as a "purpose or willingness" to bring about, or allow, such result.

[3]In view of the fact that the adverb "willfully" does not appear immediately before the verb "inflicts," it might perhaps be argued that a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he simply "inflicts . . . unjustifiable physical pain or mental suffering" on "any child" (Pen. Code,

suffering"; in addition, he must do so for the purpose of bringing about such a result.

Under the third branch, a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he "willfully causes or permits the person or health "of any child in his "care or custody" "to be injured . . . ." (Pen. Code, § 273a, subd. (a).) Again, he must, at least, intentionally commit an act or omission that "causes or permits the person or health" of such a child "to be injured"; in addition, he must do so for the purpose of bringing about, or allowing, such a result.

Under the fourth and final branch, a person may be guilty of felony child abuse if, "under circumstances or conditions likely to produce great bodily harm or death," he "willfully causes or permits" any child in his "care or custody" "to be placed in a situation where" the child's "person or health is endangered . . . ." (Pen. Code, § 273a, subd. (a).) Yet again, he must, at least, intentionally commit an act or omission that "causes or permits" such a child "to be placed in a situation where" the child's "person or health is endangered"; in addition, he must do so for the purpose of bringing about, or allowing, such a result.

It follows that felony child abuse may be described as including three elements. The first goes to the perpetrator's *context*, specifically, "circumstances or conditions likely to produce great bodily harm or death." (Pen. Code, § 273a, subd. (a).) The second goes to the perpetrator's *conduct*, specifically, an act or omission that "causes or permits" a child "to suffer . . . unjustifiable physical pain or mental suffering," *or* "inflict[s]" on a child "unjustifiable physical pain or mental suffering," *or* "causes or permits the person or health" of a child in his "care or custody" "to be injured," *or* "causes or permits" such a child "to be placed in a situation where" the child's "person or health is endangered." (*Ibid.*) The third goes to the perpetrator's *mental state*, specifically, an intent to commit one of the

---

§ 273a, subd. (a)), whether or not he does so "willfully." Such an argument, however, is foreclosed by our decision in *People* v. *Smith* (1984) 35 Cal.3d 798 [201 Cal.Rptr. 311, 678 P.2d 886]. There, we expressly and broadly held that, in order to be guilty of the offense, a person must commit one of the proscribed acts or omissions "willfully." (*Id.* at p. 806.) We thereby impliedly and narrowly held that, in order to be guilty of the offense, a person must "inflict . . . unjustifiable physical pain or mental suffering" (Pen. Code, § 273a, subd. (a)) in like fashion. That holding is surely sound. For, in common usage, both within the law and without, the verb "inflict" connotes "willfulness" in and of itself: to "inflict" harm is to cause it *intentionally* and not, as it were, by accident.

proscribed acts or omissions, and a purpose to bring about, or allow, one of the proscribed results. (*Ibid.*)[4]

Neither the majority nor the dissenting justice in the Court of Appeal explicates felony child abuse thus. Each sets forth extensive discussion. Such discussion, however, turns out to be nothing more, and nothing less, than an analytical tar baby, with which courts should decline to struggle.

In part, the dissenting justice in the Court of Appeal indulged himself, impliedly, in considerations of "general intent" and "specific intent." Inappropriately. For such notions do not assist in performing the task at hand, which is to explicate felony child abuse. "General intent" and "specific intent" "evolved as labels to identify" particular offenses, with "specific intent" "admitting . . . the defense of voluntary intoxication" and "general intent" not doing so. (*People* v. *Cain* (1995) 10 Cal.4th 1, 83 [40 Cal.Rptr.2d 481, 892 P.2d 1224] (conc. opn. of Mosk, J.); accord, *People* v. *Hood* (1969) 1 Cal.3d 444, 455-457 [82 Cal.Rptr. 618, 462 P.2d 370]; see *People* v. *Whitfield* (1994) 7 Cal.4th 437, 463 [27 Cal.Rptr.2d 858, 868 P.2d 272] (conc. and dis. opn. of Mosk, J.).) "General intent" has usually been affixed if the mental element of an offense entails only an intent to engage in certain proscribed conduct. (*People* v. *Hood, supra,* 1 Cal.3d at pp. 456-457.) In contrast, "specific intent" has usually been affixed if the mental element of an offense entails an intent to engage in certain proscribed conduct for the purpose of bringing about, or allowing, a certain proscribed result. (*Id.* at p. 457.) "General intent" and "specific intent" have shown themselves to be "notoriously difficult . . . to define and apply." (*Id.* at p. 456; accord, *People* v. *Cain, supra,* 10 Cal.4th at p. 84 (conc. opn. of Mosk, J.).) For this reason, "they have proved to be mischievous." (*People* v. *Cain, supra,* 10 Cal.4th at p. 84 (conc. opn. of Mosk, J.).) Even if they were not so, they simply do not assist in explicating felony child abuse. Neither do they aid in describing its mental element. Indeed, were we to attempt to affix the label of "general intent" or "specific intent," we would doubtless have to select both—"general intent," insofar as its mental element entails an intent to commit one of the proscribed acts or omissions; and "specific intent," insofar as it entails an intent to do so for the purpose of bringing about, or allowing, one of the proscribed results.

In other part, the dissenting justice in the Court of Appeal indulged himself, expressly, in considerations of "general intent" and "criminal negligence." Again, inappropriately. For such notions also do not assist in

---

[4]What is stated in the text concerning felony child abuse applies, *mutatis mutandis,* to its misdemeanor counterpart—the *mutanda* comprising "circumstances or conditions *other than those likely to produce great bodily harm or death*" (Pen. Code, § 273a, subd. (b), italics added).

performing the task at hand, which is to explicate felony child abuse. "Criminal negligence"—to quote *People* v. *Peabody* (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780] (hereafter sometimes *Peabody*)—"must go beyond [ordinary negligence] required for civil liability and must amount to a 'gross' or 'culpable' departure from the required standard of care. [Citations.] [It] must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. [It] must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life." (*Id.* at p. 47.)[5] "General intent" and "specific intent" are, at least, complementary terms. "General intent" and "criminal negligence," as is apparent, are not.

The dissenting justice in the Court of Appeal claimed to discern a mental element of "criminal negligence" in felony child abuse insofar as the perpetrator's conduct involves a proscribed omission. He did so apparently on the assumption that such an omission implies such negligence.

The dissenting justice in the Court of Appeal was wrong: felony child abuse does *not* include a mental element of "criminal negligence" for the proscribed omission. To be sure, such negligence may accompany such an omission. But so may recklessness or knowledge or even purpose—as when one fails to act in order not to hinder a desired result.

For its part, the majority in the Court of Appeal claimed to discern a mental element of "criminal negligence" in felony child abuse generally, without regard to whether the perpetrator's conduct involves either a proscribed act or a proscribed omission. It did so following *Peabody* and its progeny, which had done the same, albeit while looking to branches of the offense other than the second, which is of particular concern here, for the sake of assuring "consistency" in all its branches. It also did so in reliance on the offense's context element, which covers "circumstances or conditions likely to produce great bodily harm or death" (Pen. Code, § 273a, subd. (a)), in the belief that, without "criminal negligence," the offense would not include a mental element other than that indicated by "willfulness," which it shared with its misdemeanor counterpart, and would thereby show itself to be "tantamount" to a "disfavored" offense of strict liability.

---

[5]For offenses against the person, "criminal negligence" may indeed demand the absence of a "proper regard for human life" and the presence of "actual or imputed" "knowledge" of danger thereto. (*People* v. *Peabody, supra,* 46 Cal.App.3d at p. 47.) For other kinds of offenses, of course, it does not. (See *People* v. *Brian* (1980) 110 Cal.App.3d Supp. 1, 3-5 [168 Cal.Rptr. 105].)

The majority in the Court of Appeal was wrong as well: felony child abuse does *not* include a mental element of "criminal negligence" generally. It ought not to have followed *Peabody* and its progeny. These decisions did not read what the statutory language stated as much as state what they had read into such language. Neither ought it to have relied on the offense's context element covering "circumstances or conditions likely to produce great bodily harm or death." (Pen. Code, § 273a, subd. (a).) "Criminal negligence" is not referred to in the statutory language. Indeed, it is not even suggested. There is absolutely no "require[ment]" that the perpetrator possess either "actual or imputed" "knowledge" (*People v. Peabody, supra,* 46 Cal.App.3d at p. 47) that his conduct is "likely to produce great bodily harm or death" (Pen. Code, § 273a, subd. (a)). Moreover, even without "criminal negligence," the offense cannot be deemed to be "tantamount" to one of strict liability. An offense is of this kind if it does not include any mental element whatsoever. (See *People v. Simon* (1995) 9 Cal.4th 493, 519-522 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) This offense is not such. Neither can it be considered similar. For it obviously includes a mental element, which is indicated by "willfulness." It does not stand in need of another. To be sure, the law requires that an offense must include a conduct element and a mental element in union. (Pen. Code, § 20.)[6] But it does not prohibit it from including an element of a third kind, like a context element, not possessing aspects of either of the other two.[7]

The majority in the Court of Appeal evidently believed that felony child abuse could not, or at least should not, be distinguished from its misdemeanor counterpart solely by its context element. There is no basis for a belief of this sort. A felony may be distinguished from a corresponding misdemeanor solely on the basis of a context element. So is it with theft (Pen. Code, § 484), specifically, the felony (more precisely, the alternative felony/misdemeanor) of grand theft (*id.,* §§ 487, subd. (a), 489, subd. (b)) and the misdemeanor of petty theft (*id.,* §§ 488, 490), where the former may be distinguished from the latter solely on the basis of a context element indicating that the value of the item taken exceeds $400 (*id.,* § 487, subd. (a); see *id.,* § 488). Likewise with burglary (*id.,* § 459), specifically, the felony of first degree burglary (*id.,* §§ 460, subd. (a), 461, subd. 1) and the

---

[6] Penal Code section 20 provides that, "[i]n every . . . offense there must exist a union, or joint operation of act or intent, or criminal negligence." It was enacted in 1872, and has never been amended. Its reference to "intent" and "criminal negligence" should not be understood, narrowly, to identify two particular mental states, but rather, broadly, to embrace the full range of such states.

[7] In section 2.02(1) of the Model Penal Code, the American Law Institute has stated that, generally, each element of an offense that is not itself a mental element should nevertheless possess a mental aspect. On its very face, its statement is qualified. In any event, it is not binding in California.

misdemeanor (more precisely, the alternative felony/misdemeanor) of second degree burglary (*id.*, §§ 460, subd. (b), 461, subd. 2), where the former may be distinguished from the latter solely on the basis of a context element indicating that the nature of the structure entered was that of an inhabited dwelling house (*id.*, § 460, subd. (a); see *id.*, § 460, subd. (b)). Unproblematically so. The context element of a felony may properly mark it as more serious than a corresponding misdemeanor because the consequences of the felony, either actual or potential, are deemed to be graver than those of the misdemeanor, as where the item taken in a theft has a value exceeding $400 or the structure entered in a burglary is an inhabited dwelling house. Thus is it here. The context element of felony child abuse covers "circumstances or conditions likely to produce great bodily harm or death." (*Id.*, § 273a, subd. (a).) That of its misdemeanor counterpart, in contrast, covers "circumstances or conditions *other than those likely to produce great bodily harm or death.*" (*Id.*, § 273a, subd. (b), italics added.)[8]

In conclusion, I join in reversing the judgment of the Court of Appeal insofar as it modified the judgment of the superior court convicting appellant of felony child abuse to one convicting him of its misdemeanor counterpart.

Kennard, J., concurred.

On March 9, 1999, the opinion was modified to read as printed above.

---

[8]It is clear that, as a general matter at least, whether the "circumstances or conditions" that obtained in any given case were indeed "likely to produce great bodily harm or death" (Pen. Code, § 273a, subd. (a)) is a question for the trier of fact. (Maj. opn., *ante*, at p. 1221.) That question, as the analysis in the text makes plain, is an objective one that goes to the perpetrator's context, and not a subjective one that goes to his mental state.

It is also clear that, whenever a trier of fact determines that a perpetrator is guilty of felony child abuse, it necessarily finds that he was at least "criminally negligent." For, in making its determination, it necessarily finds that the "circumstances or conditions" that obtained were "*likely* to produce great bodily harm or death" (Pen. Code, § 273a, subd. (a), italics added), and not merely "capable" of doing so, as it were, by some bare "possibility." Because such "circumstances or conditions" were "likely" to produce such a result, the perpetrator must in fact have known of the risk, or at the very least should have done so.