Filed 11/22/13  P. v. Covey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALAN COVEY,<br><br>Defendant and Appellant. | D062941<br><br><br><br>(Super. Ct. Nos. SCD236517;<br>SCD241683) |

APPEAL from judgments of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

John Alan Covey appeals a judgment following his jury conviction of one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] Covey contends: (1) the trial court abused its discretion by excluding evidence of the assault victim's stalking conduct toward him after the assault; (2) the trial court abused its discretion by excluding evidence of a cell phone call he had with his employer during the incident; (3) he was denied effective assistance of counsel; and (4) the evidence is insufficient to support his conviction. Covey also apparently appeals a judgment entered after he pleaded guilty to one count of failing to appear (§ 1320.5) and admitted a prior strike conviction allegation based on his assault conviction (§ 667, subds. (b)-(i)). He contends that if his assault conviction is reversed, his failure to appear conviction and prior strike conviction admission must also be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2011, Ignacio Silva, then about 52 years old, saw Patricia Creighton, then 40 years old, at a bar in North Park. Creighton was Covey's girlfriend. Silva had not seen Creighton since she was in high school and lived near him. Creighton told Silva she should not be drinking. Silva stated that maybe God had sent him there to help her and asked her to accompany him to a friend's house so he could check his e-mails. On the way there, she told him she had suffered a nervous breakdown and was having problems with Covey. Although she loved Covey, she said she could not be with him because of their drug use. She also told Silva she was going to be evicted from her

---

1    All statutory references are to the Penal Code unless otherwise specified.

2

single-person apartment because Covey was living with her and refused to leave. Silva offered to help her. She said Covey had hit her before and she was afraid to go home.

Silva walked Creighton to her apartment building at the corner of Howard Avenue and Louisiana Street. On his suggestion, they went to the apartment manager's office and obtained an eviction notice to evict Covey from her apartment. Silva took the eviction notice and they went to her apartment. After Silva knocked on the door, Creighton said, "It's me, Patricia." Silva then stated he had an eviction notice for Covey and he was not a police officer. Covey replied, "Get the fuck out of here. I'll kick your ass." Silva told Covey that he (Covey) needed to leave. Creighton told Covey that Silva was just a friend and he should open the door. After about 10 to 15 minutes, Covey still had not opened the door. Silva then walked Creighton to a hotel across the street where she got a room. He gave her his phone number and left. Silva and Creighton spoke by phone later that evening, but he did not return to the hotel. At trial, Silva testified he had no sexual interest in Creighton and was not interested in dating her because he did not have the money to do so.

At about 9:00 a.m. on August 26, 2011, Silva rode his bicycle to Creighton's apartment building. Outside her apartment window from Howard Avenue, Silva yelled, "Patricia, are you there?" Creighton replied, "Iggy, is that you?" Silva answered "yes," and asked her if she needed his help. She replied, "Yes." Covey then appeared at the window and told Silva, "Get the fuck out of here. You don't know who I am. I'll kill you." Silva replied, "[H]ey big man, I'm down here, come on down here." Creighton

3

asked Silva not to leave and asked him whether he wanted to come up. Silva declined to do so because he did not know Covey, what he (Covey) was capable of, and whether he was armed. Silva then pulled out his cell phone and pretended to call police to see what Covey would do. Creighton told Silva that she would meet him at the front gate.

Silva rode his bicycle to the front gate on Louisiana Street to meet Creighton. He rode his bicycle in circles in the middle of the street while waiting for her. Covey then drove his silver Honda Element around the corner, with tires screeching, and drove toward Silva, coming within two feet of him. Covey yelled to Silva, "I'm going to kill you," and "[Y]ou need to get the fuck out of here." Silva hopped off his bicycle and ran to the sidewalk. Covey circled around and drove up on the sidewalk toward Silva. Covey drove his car within one or two feet of Silva, who then moved in between two parked cars for protection. Had Silva not moved, the car would have hit him. Silva told Covey, "You're a real man, you know, trying to run me over with the car, why don't you get out of the car." Covey replied, "[Y]ou don't know me. . . . [Y]ou need to stay the fuck away from here." Covey also told Silva to stay away from Creighton. Silva told him that she was just a friend. Covey reversed his car and drove toward El Cajon Boulevard. During this incident, people yelled to Silva and asked him whether he needed help.

Patrick Cowan, a retired correctional officer, witnessed part of the incident. As he was driving home from the gym, he turned from El Cajon Boulevard onto Louisiana Street and saw what appeared to be a vehicle accident with a bicyclist. He saw a Honda

4

Element driving south and a bicyclist in the middle of the street jump off his bicycle to avoid being hit. The Honda then made a u-turn at the intersection of Louisiana and Howard and drive up onto the sidewalk or driveway in front of the apartment building where Silva was standing. It continued to drive toward Silva and came within two or three feet of him when Silva grabbed his bicycle and moved in between two parked cars in the driveway. The Honda drove past Silva and made another u-turn on Louisiana. The Honda made another u-turn on Louisiana and screeched and spun its tires. The Honda's driver yelled out his window: "[S]tay away from [my] girlfriend." The Honda then continued north and turned onto El Cajon Boulevard.

Cowan recognized Silva as an acquaintance from the gym, drove up near him, and asked him whether he was okay. Staying in his vehicle, Cowan spoke with Silva and waited for him to call 911. Silva appeared to be shaken up and scared. Silva called 911 and gave the operator the car's license plate number and description. He stated, "That guy, he's kind of crazy. He tried to run me over right now." He said that the car made a couple of "donuts" and tried to run him over. Silva said he pulled over by the parking lot in between two parked cars. While Silva was calling 911, Cowan saw the Honda come back around the block again and its driver yell at Silva to stay away from his girlfriend. Silva yelled something back, but Cowan could not recall what he said. The Honda continued travelling north and turned onto El Cajon Boulevard. Cowan waited with Silva for about five minutes, gave him his business card, and then went home. A police officer responding to the 911 call described Silva as appearing upset, worried, and concerned.

5

On September 15, 2011, a felony complaint was filed in San Diego County Superior Court case No. SCD236517, alleging that Covey committed an assault with a deadly weapon (§ 245, subd. (a)(1)) against Silva and further alleged he personally used a deadly weapon in committing that offense (§ 1192.7, subd. (c)(23)). On November 9, 2011, an information was filed charging Covey with that offense and alleging his personal use of a deadly weapon and probation denial prior convictions (§ 1203, subd. (e)(4)).

At trial, the prosecution presented evidence substantially as described above. In his defense, Covey testified that in 2005 he had voluntarily resigned his law license and was convicted of possession of methamphetamine for sale. He met Creighton, who also had substance abuse issues, and they began cohabitating. Creighton was still his girlfriend at the time of trial. Covey testified that on the evening of August 24, 2011, Silva violently banged on his front door, told him he had legal papers to serve him, and told him to leave the apartment. Silva also challenged him to a fight. Covey kept the door closed because he knew Silva was a threat. Thirty minutes later, he heard Creighton's voice outside the door. Covey got dressed, went outside, and saw Silva riding away on his bicycle. After spending the night at a hotel, Creighton returned to the apartment the following morning.

A day or two later, Covey was preparing to go to work in the morning when he heard someone yelling, "Patricia, Patricia." He looked out the window and saw Silva, wearing no shirt or shoes, riding his bicycle in an S-pattern down the street. Covey told

6

him to stop yelling at their apartment and that Creighton did not want to speak with him. Silva swore at him, challenged him to a fight, and threatened to kill him. Covey then finished getting ready for work.

About 30 to 45 minutes later, Covey left for work in his Honda Element. As he approached the intersection of Howard and Louisiana, he saw no sign of Silva and turned onto Louisiana. As Covey drove on Louisiana, Silva rode his bicycle up next to him, swore at him, and challenged him to a fight. Covey backed his car up about 10 feet, performed a u-turn, and headed south on Louisiana. Silva then rode up next to him again and threatened him. Covey stopped suddenly, backed up a few feet and lost sight of Silva as he made another u-turn. He saw Silva in between two parked cars. Covey told Silva to leave his girlfriend alone and that she did not want to talk to him. Silva leapt toward his window. As Covey drove toward El Cajon Boulevard, he was concerned that Creighton did not know Silva was outside. Covey "chirped" his tires as he drove back to the apartment complex, checked to see that his garage was locked, and then drove onto Howard and saw Silva on the phone, standing near a person in a car. Covey yelled to Creighton that Silva, whom they referred to as "the stalker," was outside the apartment building. After she agreed to keep the doors locked, Covey drove to work. As he drove away, he saw Silva laugh and "flip him off." Although Covey had his cell phone with him, he did not try to call police. Covey denied trying to run over Silva.

Also in Covey's defense, attorney Christopher Funtall, his employer, testified that on the date of the incident, they were gathering documents for inspection that day by

7

opposing counsel. A high school automotive teacher testified the back wheels of a Honda Element could not spin because it has front-wheel drive. However, its front wheels can make a screeching noise.

The jury found Covey guilty of assault with a deadly weapon (§ 245, subd. (a)(1)), and found true the allegation he personally used a deadly weapon in committing that offense. Covey remained out on bail pending sentencing, scheduled for May 3, 2012. However, Covey did not appear for that scheduled sentencing hearing.

On June 27, 2012, a felony complaint was filed in San Diego County Superior Court case No. SCD241683, charging Covey with failure to appear (§ 1320.5) with an out-on-bail enhancement (§ 12022.1, subd. (b)). It further alleged he had a prior strike conviction in San Diego County Superior Court case No. SCD236517.

Covey, in propria persona, filed a motion for new trial, arguing he was denied effective assistance of counsel. The trial court denied the motion. Covey then pleaded guilty in case No. SCD241683 to violating section 1320.5 and admitted the out-on-bail and prior strike conviction allegations. Thereafter, following an evidentiary hearing, the trial court denied Covey's motion for reconsideration of its denial of his motion for new trial in case No. SCD236517.

On October 26, 2012, the trial court sentenced Covey to a term of four years (double the two-year middle term based on a prior strike conviction) for his failure to appear conviction (§ 1320.5) in case No. SCD241683 and to a consecutive one-year term (one-third the three-year middle term) for his assault with a deadly weapon conviction

8

(§ 245, subd. (a)(1)) in case No. SCD236517, for a total term of five years in prison. Covey timely filed a notice of appeal challenging the October 26, 2012, judgments.

DISCUSSION

I

*Exclusion of Evidence of Silva's Postincident Stalking*

Covey contends the trial court abused its discretion under Evidence Code section 352 by excluding evidence of Silva's stalking conduct that occurred after the August 26, 2011, incident.

A

Before trial, the prosecutor moved to exclude evidence regarding Covey's reporting of alleged stalking conduct by Silva after the incident and his (Covey's) application for a temporary restraining order (TRO) based on that conduct. She noted the instant incident occurred on August 26, 2011. Covey was arrested for the alleged assault on September 7 and arraigned on the complaint on September 15. The prosecutor stated: Covey obtained a TRO against Silva on September 20, just five days after he (Covey) was arraigned; in Covey's declaration in support of the TRO, Covey claimed Silva stalked and threatened Creighton and him on September 16 and again on September 17, yet he had not yet reported that conduct to police; and on September 26, Covey reported to police Silva's alleged September 16 threat against him. She argued evidence of Silva's alleged stalking conduct and the TRO should be excluded as irrelevant because it occurred after the alleged August 26 assault by Covey. She also argued that evidence

9

should be excluded under Evidence Code section 352 because its probative value is substantially outweighed by the probability that its admission would necessitate undue consumption of time, confuse the issues, and mislead the jury.

Covey opposed the prosecutor's motion to exclude the stalking evidence, arguing it would show a continuing course of conduct by Silva's actions that began on August 24 and continued on August 26 and thereafter. Covey argued the evidence would show Silva was lying about the August 26 incident because he wanted to remove him (Covey) so he could be with Creighton. Covey's counsel explained the TRO was not obtained until after Covey's arraignment because he (his counsel) did not know Silva's identity until the arraignment.

The prosecutor argued Covey was well-versed in the law and how criminal cases work and went on the offensive to subsequently make those police reports to portray Silva as a crazy stalker. The trial court ruled that it was "going to exclude the post arrest [TRO] . . . because I think, on [an Evidence Code section] 352 analysis, I think it's more time consuming that it is helpful." The court further stated: "[A]nything that's post the incident I don't think is something that you [Covey's counsel] can cross-examine him [Silva] on." To clarify the court's ruling, the prosecutor asked: "[J]ust to be clear, so there's no cross-examining [Silva] about whether or not there is a [TRO] between himself and the defendant?" Covey's counsel replied: "No. I understand my limitation."

During trial, Covey's counsel renewed his request to allow him to present testimony on the postincident TRO he obtained against Silva, arguing the prosecutor had

opened the door for it by leading the jury to believe Covey did not call the police after the first and second incidents (presumably referring to the August 24 and August 26 incidents). The trial court disagreed and denied Covey's motion.

B

Evidence Code section 352 provides:

> "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

On appeal, "[w]e apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) A trial court's ruling excluding evidence "will be upheld unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.)

C

Covey contends the trial court abused its discretion under Evidence Code section 352 by excluding evidence of Silva's stalking conduct that occurred after the August 26, 2011, incident. He argues that evidence would have bolstered the credibility of his testimony that Silva tried to start a fight with him on August 26 and otherwise corroborated his testimony regarding what occurred on that date. He further argues, in

11

conclusory fashion, the stalking evidence would not have been cumulative, likely to confuse, or be time-consuming.

However, Covey does not cite to the record on appeal showing any proffer of evidence to the trial court, whether consisting of the TRO or supporting declaration or any other description of the nature and character of Silva's purported stalking conduct. Our independent review of the record does not reveal any information regarding Silva's purported stalking conduct other than the dates of that conduct (i.e., September 15, 2011, and September 16, 2011) and that Covey obtained a TRO against Silva on September 20. Absent specific information in the record on appeal regarding the nature and character of Silva's purported stalking conduct, we are unable to determine whether the trial court abused its discretion under Evidence Code section 352 by excluding that evidence as unduly time consuming. The court stated that evidence was "more time consuming than it is helpful." Accordingly, the court presumably concluded the probative value of that evidence would be substantially outweighed by the probability that its admission would necessitate undue consumption of time. (Evid. Code, § 352.) We are unable to evaluate the probative value of the evidence without specific information regarding Silva's purported stalking conduct. The record on appeal does not contain a copy of the TRO or any supporting declaration. The mere fact that a TRO was apparently issued on September 20, 2011, is insufficient information for us to make any evaluation of the probative value of the excluded evidence. Therefore, Covey has not carried his burden on appeal to show the trial court abused its discretion by concluding the probative value

12

of the evidence would be substantially outweighed by the probability that its admission would necessitate undue consumption of time.

Covey has the burden on appeal to affirmatively show the probative value of the excluded evidence and that the trial court abused its discretion under Evidence Code section 352 by concluding its probative value probably would be substantially outweighed by undue consumption of time. (Cf. *People v. Whalen* (2013) 56 Cal.4th 1, 64 ["Defendant has not, however, met his burden on appeal to affirmatively show [the nature of the evidence]. [Citation.] We cannot ourselves make that determination, because the [evidence was] not filed or lodged with the trial court and [is] not part of the record on appeal."].) "[O]n appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Covey has not provided an adequate record on appeal to allow us to consider the merits of his contention, and has not carried his burden on appeal to persuade us the trial court abused its discretion by excluding the stalking evidence under Evidence Code section 352.

II

*Exclusion of Phone Call Evidence*

Covey contends the trial court abused its discretion by excluding evidence of a cell phone call he had with his employer (Funtall) during the incident. He asserts the court

erred by excluding that evidence as a sanction for his violation of discovery rules. He also asserts the court also erred to the extent it excluded the evidence as irrelevant.

A

Toward the end of the defense case, Covey presented the testimony of Funtall, an attorney who employed Covey in August 2011. Funtall testified that on the date of the incident, he and Covey together had to gather documents for inspection that day by opposing counsel.

After the defense rested, Covey's counsel placed on the record a request that testimony regarding a certain phone call be admitted, which request apparently had previously been made to the trial court off the record. The proffered testimony was regarding a cell phone call between Covey and Funtall at 9:21 a.m. on August 26, 2011, two minutes after Silva placed his 911 call. Covey's counsel stated he initially thought the phone call occurred during the incident with Silva, but then noticed the two-minute difference in the timing of the two calls and realized the Funtall phone call did not occur at the same time. He stated that, as the case unfolded, it became clear to him the Funtall call could constitute a fresh complaint by Covey about Silva's conduct (i.e., Silva threatened to kill him and was acting erratically).

The trial court asked Covey's counsel when he obtained Funtall's phone records showing the time of the call. He replied he had had them since Monday (two days earlier). He also spoke with Funtall about the phone call on Monday. The court asked him why he waited until minutes before Funtall's testimony to request that he be allowed

14

to testify regarding the phone call. Covey's counsel replied that the "fresh complaint" theory did not occur to him until then. He also stated the prosecutor had timely received Funtall's information and could have interviewed him in advance regarding his knowledge as a witness. However, the trial court stated that although Covey's counsel's trial strategies may change, the discovery rules do not. The court stated: "[D]iscovery rules are that if [Funtall] was going to testify about something that was probative, then [the prosecutor] should have been told about that a long time ago or you should have interviewed him and given her a report. And if that had been done, then I might have had a different attitude. But that had not been done, and so I'm not going to jump all over the discovery laws and all discovery rules and say oh, he can testify because he has something that may be somewhat corroborative of what Mr. Covey said." Accordingly, the court excluded testimony by Funtall regarding the phone call apparently as a sanction for the failure of Covey's counsel to timely disclose that evidence to the prosecution.

After trial, Covey, in propria persona, filed a motion for new trial arguing he was denied effective assistance of counsel because his counsel did not investigate and present evidence on the Funtall phone call. At an evidentiary hearing on the motion, Covey questioned his trial counsel regarding his trial tactics and other issues, but did not question him regarding the Funtall phone call evidence. The trial court denied Covey's motion, finding his counsel did not perform deficiently and Covey was not prejudiced by his counsel's performance. Regarding prejudice, the court stated: "I think the two reasons you got convicted was, number 1, the jurors believed Mr. Cowan. And, number 2, you

15

were a very difficult witness on your own behalf, and you wanted to tell the story the way you wanted to tell it, and you were very rude to [the prosecutor] when she was trying to ask you questions. And the jury didn't like that. And they didn't believe you. [¶] And so that was really the gravamen of why you got convicted. Not anything that [your trial counsel] did or didn't do."

Covey filed a motion for reconsideration of the trial court's denial of his motion for new trial, arguing he was denied effective assistance of counsel because his counsel did not investigate and question Funtall regarding the phone call. At an evidentiary hearing on the motion, Funtall testified that on August 26, 2011, he was speaking on the phone with Covey when he (Covey) told him a shirtless, apparently homeless, man on a bicycle "was menacing him." Funtall testified that Covey told him the shirtless man "had come at him before and was coming after him again." Covey did not know why the man was coming at him. During the call, Funtall heard a man in the background screaming and yelling at Covey in a hateful and profane manner, and the man's voice got louder as he apparently got closer to Covey. Funtall stated Covey seemed scared during the phone call. Covey indicated to Funtall that he felt threatened by the man. Funtall was angry at Covey for staying there and told him to leave, fearing he might get killed or hurt. Covey then got away from the man. Funtall's phone call with Covey lasted four minutes.

The trial court discussed Funtall's proffered testimony, stating:

> "[T]he event that's described by Mr. Cowan where you [Covey] drove your car directly at Mr. Silva and Mr. Silva drove between two cars to avoid that contact, that had already occurred. That's what I'm trying to say. That had already occurred when you were

16

talking to Mr. Funtall. [¶] And so that's why I didn't allow Mr. Funtall to testify at the trial. And so I allowed Mr. Funtall to testify now because I wanted to make sure you had an opportunity to put on the record what you wanted to put on the record. But it still is the same as it was during the trial when you wanted to call Mr. Funtall, that Mr. Funtall was not talking to you when the incident was occurring, when the event was occurring that's described by Mr. Cowan."

The court noted that the jury heard Covey's counsel cross-examine Silva and place on full display "all of his warts and all of his quirkiness." The court stated that "had it not been for Mr. Cowan's testimony, which the jury believed, . . . I suspect there may have been a different result. But the jury believed Mr. Cowan. Mr. Cowan had no reason to tell a different story. And Mr. Cowan said what he said. And Mr. Cowan said you drove at [Silva] and tried to hit him." The court found Funtall's testimony regarding Covey's demeanor and events occurring after the assault that Cowan witnessed was not relevant. The court also found Funtall's testimony regarding Covey's statements during the phone call was hearsay. To the extent those statements were admissible on Covey's state of mind, the court found they were irrelevant because they occurred after the assault. The court stated the phone call with Funtall was not contemporaneous with the assault described by Cowan and Silva. Rather, Covey's phone call with Funtall was after that event occurred. The court stated:

"[I]n my mind, the event was already completed when Mr. Cowan made the 911 call. So that's why I didn't allow Mr. Funtall to testify about your conversation with him, because it wasn't a contemporaneous conversation with the actual driving toward Mr. Silva event."

17

The court stated that in its view the case "came down to you gave your version. Cowan and Silva gave their versions. The jury believed Cowan and Silva's version over yours." The trial court denied Covey's motion for reconsideration.

B

Covey asserts the trial court prejudicially erred by excluding evidence of the Funtall phone call as a sanction for his counsel's discovery violation and, alternatively, as irrelevant to the issues at trial. However, assuming arguendo the court erred by excluding the evidence as a discovery sanction under section 1054.3 and/or as irrelevant to the issues at trial, we nevertheless conclude Covey has not carried his burden on appeal to persuade us the excluded evidence was prejudicial.

Because on appeal a judgment is presumed correct, an appellant "must affirmatively demonstrate prejudicial error." (*People v. Garza*, *supra*, 35 Cal.4th at p. 881.) The standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 for state law error applies to the presumed error in excluding the Funtall phone call evidence, and therefore Covey must show it is reasonably probable he would have obtained a more favorable verdict absent the trial court's error. The trial court's exclusion of the Funtall phone call evidence did not deprive him of his right to present a defense and therefore did not constitute federal constitutional error to which the *Chapman v. California* (1967) 386 U.S. 18, 24 "harmless beyond a reasonable doubt" standard of prejudice would apply. A "defendant has the general right to offer a defense through the testimony of his or her witnesses [citation], but a state court's application of ordinary

18

rules of evidence . . . generally does not infringe upon this right [citations]." (*People v. Cornwell* (2005) 37 Cal.4th 50, 82; see also *Holmes v. South Carolina* (2006) 547 U.S. 319, 326.)  Furthermore, Covey does not persuade us the trial court's exclusion of the Funtall phone call evidence as a discovery sanction deprived him of his right to present a defense.  Based on our review of the record, the Funtall phone call evidence "was not so vital to the defense that due process principles required its admission." (*Cornwell*, *supra*, at p. 82; cf. *Chambers v. Mississippi* (1973) 410 U.S. 284, 303 [exclusion of critical hearsay evidence in the circumstances of that case deprived the defendant of a fair trial].) "Although the complete exclusion of evidence intended to establish an accused's defense may impair his or her right to due process of law, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.)  In determining the prejudicial effect of the trial court's assumed error in excluding the Funtall phone call evidence, we apply the *Watson* standard of harmless error.  (*Cunningham,* at p. 999.)

Applying the *Watson* standard of prejudice to the record in this case, we conclude it is not reasonably probable Covey would have obtained a more favorable verdict absent the assumed error by the trial court in excluding the Funtall phone call evidence.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)  Silva testified Covey tried to run him over twice. His testimony was consistent with his 911 call, a recording of which was played for the jury.  His demeanor during the 911 call and subsequent interview with police was consistent with an assault by Covey with his car.  Importantly, as the trial court also

19

found, Cowan's testimony was crucial in this case. As a retired correctional officer driving by the scene at the time of the incident, Cowan apparently was unbiased. Cowan testified he saw a Honda Element driving south and a bicyclist in the middle of the street jump off his bicycle to avoid being hit. The Honda then made a u-turn at the intersection of Louisiana and Howard and drove up onto the sidewalk or driveway in front of the apartment building where Silva was standing. It continued to drive toward Silva and came within two or three feet of him when Silva grabbed his bicycle and moved in between two parked cars in the driveway. Because the jury clearly found Cowan's testimony to be credible, the jury presumably found his testimony corroborated Silva's testimony and discredited Covey's contrary testimony. Accordingly, evidence of Covey's postincident phone call with Funtall showing Covey's scared demeanor during the call and a man yelling profanity in the background had little, if any, probative value. It is very likely the jury would have given that evidence minimal weight and, instead, relied primarily on the testimonies of Silva and Cowan in deciding whether Covey had, in fact, assaulted Silva with his car at least two minutes before the Funtall phone call. Based on our review of the evidence, we conclude it is not reasonably probable Covey would have obtained a more favorable verdict had the trial court not excluded the Funtall phone call evidence. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) Covey does not persuade us to reach a contrary conclusion.[2]

---

[2]    We are not persuaded by Covey's conclusory argument regarding prejudice: "Because the excluded evidence had a bearing on the key witnesses' credibility, it is

20

III

*Ineffective Assistance of Counsel*

Covey contends he was denied effective assistance of counsel because his counsel failed to investigate and timely disclose the Funtall phone call evidence, which resulted in the trial court's exclusion of that evidence (as discussed in part II above).

A

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Pope* (1979) 23 Cal.3d 412, 422, disapproved on another ground by *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)  To show denial of the right to counsel, a defendant must show: (1) his or her counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defendant.  (*Strickland*, at pp. 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *Pope*, at p. 425.)  To show prejudice, a defendant must show there is a reasonable probability that he or she would have received a more favorable result had his or her counsel's performance not been deficient. (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.)  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the [trial counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt."

---

reasonably probable that a different result would have occurred had the sanction not been imposed."

21

(*Strickland*, at p. 695.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*People v. Williams* (1997) 16 Cal.4th 153, 215.)  It is the defendant's burden on appeal to show that he or she was denied effective assistance of counsel and is entitled to relief.  (*Ledesma*, at p. 218.)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions.  [Citations.] . . .  Accordingly, a reviewing court will reverse a conviction on the ground of inadequate counsel 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' "  (*People v. Frye* (1998) 18 Cal.4th 894, 979-980.)

However, a court need not address the issue of whether a defendant's counsel performed deficiently before it addresses the issue of whether the defendant was prejudiced by that purported deficient performance.  "If it is easier to dispose of an ineffectiveness claim on the ground of a lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697; see also *In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

B

Assuming arguendo Covey's counsel performed deficiently as Covey asserts, we nevertheless conclude he has not carried his burden on appeal to show that such deficient performance prejudiced his case.  (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 687,

22

691-692, 697; *People v. Ledesma*, *supra*, 43 Cal.3d at pp. 216-217; *People v. Pope*, *supra*, 23 Cal.3d at p. 425.) Based on our review of the evidence as discussed in part II.B. above, we conclude it is not reasonably probable Covey would have obtained a more favorable verdict had his counsel not performed deficiently, as Covey asserts, by not investigating and timely disclosing the Funtall phone call evidence. Alternatively stated, our confidence in the outcome of Covey's trial is not undermined by the purported deficient performance of his counsel. Because Covey was not prejudiced by his counsel's purported deficient performance, he was not denied his constitutional right to effective assistance of counsel. (*Strickland*, at pp. 687, 691-692, 697; *Ledesma*, at pp. 216-217; *Pope*, at p. 425.)

IV

*Substantial Evidence to Support Covey's Assault Conviction*

Covey contends the evidence is insufficient to support his conviction of assault with a deadly weapon (§ 245, subd. (a)(1)). He argues there is insufficient evidence that he had the intent required for assault with a deadly weapon.

A

The due process clauses of the federal and state Constitutions prohibit a criminal conviction unless a defendant's guilt is proven beyond a reasonable doubt by substantial evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307, 316-318; *People v. Johnson* (1980) 26 Cal.3d 557, 576-577; *People v. Berryman, supra,* 6 Cal.4th at p. 1083, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) On appeal, the court

23

must determine whether substantial evidence supports the conclusion of the trier of fact and not whether the evidence proves the defendant's guilt beyond a reasonable doubt. (*Johnson*, at p. 576; *People v. Reilly* (1970) 3 Cal.3d 421, 425.) "The [substantial evidence] standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible and of solid value-- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

B

Section 245, subdivision (a)(1), provides: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years . . . ." Section 240 defines an "assault" as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

"Assault and assault with a deadly weapon are general intent crimes." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1220.) "[A] defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of

24

the risk that battery might occur." (*People v. Williams* (2001) 26 Cal.4th 779, 788, fn. omitted.)  The trial court instructed with CALCRIM No. 875 on the elements of assault with a deadly weapon, including the general intent element.  Alternatively stated, "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.  Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."  (*Williams,* at p. 790.) *Williams* explained: "For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery."  (*Id.* at p. 788, fn. 3.)

In *People v. Wright* (2002) 100 Cal.App.4th 703, the court stated: "[A]ny operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon."  (*Id.* at p. 706.)  *Wright* affirmed the defendant's conviction of two counts of assault with a deadly weapon where the defendant had driven his vehicle close to his victims while trying to frighten them.  (*Id.* at pp. 705, 707-709, 724-725.)

C

At trial, Silva, the alleged victim of the assault charge, testified regarding the incident.  While riding his bicycle in the middle of the street in front of Creighton's apartment, Silva saw Covey drive his Honda Element around the corner, with tires

25

screeching, and drive toward him, coming within two feet of him. Covey yelled to Silva, "I'm going to kill you," and "you need to get the fuck out of here." Silva hopped off his bicycle and ran to the sidewalk. Covey circled around and drove up on the sidewalk toward Silva. Covey drove his car within one or two feet of Silva, who moved in between two parked cars for protection. Had Silva not moved, the car would have hit him. Silva told Covey, "You're a real man, you know, trying to run me over with the car, why don't you get out of the car." Covey replied, "[Y]ou don't know me. . . . [Y]ou need to stay the fuck away from here." Covey also told Silva to stay away from Creighton.

Cowan, the retired correctional officer, testified to what he saw of the incident. As Cowan was driving home from the gym, he turned onto Louisiana Street and saw what appeared to be a vehicle accident with a bicyclist. He saw a Honda Element driving south and a bicyclist in the middle of the street jumping off his bicycle to avoid being hit. The Honda then made a u-turn at the intersection of Louisiana and Howard and drove up onto the sidewalk or driveway in front of the apartment building where Silva was standing. It continued to drive toward Silva and came within two or three feet of him when Silva grabbed his bicycle and moved between two parked cars in the driveway.

D

Based on our review of the whole record, including the testimonies of Silva and Cowan described above, we conclude there is substantial evidence to support Covey's conviction of assault with a deadly weapon. The jury could reasonably infer from the evidence that Covey willfully drove his car toward Silva. Furthermore, the jury could

26

reasonably conclude that when Covey drove his car toward Silva, he was aware of facts that would lead a reasonable person to realize his act, by its nature, would directly and probably result in the application of force to Silva. Based on the testimonies of Silva and Cowan that Covey's car came within about two feet of Silva, the jury could reasonably infer Covey's car came so close that a reasonable person in Covey's position would realize the act's nature would directly and probably result in the application of force to Silva. Also, based on Silva initially jumping off his bicycle and moving to the sidewalk, and subsequently moving from the sidewalk to a location between two cars, the jury could infer Covey's car was very close to him and a reasonable person would realize it would directly and probably hit Silva. Finally, the jury could reasonably conclude that when Covey acted, he had the present ability to apply force with a deadly weapon (i.e., his car) to Silva.

To the extent Covey cites evidence and inferences that would support a finding he did not have the requisite intent for assault with a deadly weapon, he misconstrues and/or misapplies the substantial evidence standard of review. We conclude Covey has not carried his burden on appeal to persuade us the evidence is insufficient to support his conviction of assault with a deadly weapon.

V

*Failure to Appear Conviction*

Covey apparently contends his failure to appear conviction and prior strike conviction admission in case No. SCD241683 must also be reversed if his assault

27

conviction in case No. SCD236517 is reversed.  However, because we affirm his assault conviction, we likewise affirm his failure to appear conviction and prior strike conviction admission.  Covey does not present any substantive legal analysis showing any other ground for reversal of his failure to appear conviction and prior strike conviction admission.

## DISPOSITION

The judgments are affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.


28