Filed 12/28/15  P. v. Towry CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KRISTY ANN TOWRY,<br><br>    Defendant and Appellant. | 2d Crim. No. B261669<br>(Super. Ct. No. 2012019652)<br>(Ventura County) |

Kristy Ann Towry appeals from the judgment following her conviction by jury of felony corporal injury to a child.  (Pen. Code, § 273d, subd. (a).[1])  The trial court suspended the imposition of sentence and granted appellant four years of probation, including that she serve a 90-day jail term.

Appellant concedes that she struck her stepson but contests the severity of the blows.  She contends that the court committed prejudicial error by (1) failing to instruct the jury that battery is a lesser included offense of felony corporal injury to a child and (2) giving the jury a propensity evidence instruction which fails to define reasonable discipline.  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*[2]

*May 29, 2012 Crime*

In 2012, the 11-year-old victim, C., lived in Moorpark with his father, Timothy M., and appellant, his stepmother. C. was homeschooled. Timothy M. and appellant both disciplined C. by spanking him with a belt.

On Tuesday, May 29, they left C. home while they were at work. Before she left, appellant told him to pick up some rocks that were in the yard. She came home before noon and found C. in the house. She yelled and told him to go outside and pick up rocks. A few minutes later, she called him back inside, and told him to bend over and pull down his pants. When he complied, she hit him with a belt several times. He asked her to stop, and fell to his knees. Appellant told him to get back up. C. ran away.

California Highway Patrol Officer Abbron Ghoston responded to a report of a young child who appeared to be lost. He found C., who could not or would not provide his address or his parents' telephone number to Ghoston. Ghoston took C. to a police station, where he was interviewed by Sheriff Deputy Robert Burckard. C. explained that appellant had spanked him with a belt "between 10 and 20 times" because he did not finish his chores. C. told her to stop because he "had not ever been hit that many times."

While speaking with Burkhard, C. noticed that "it kind of hurt to sit down," and that his "leg [was] a bit sore." He raised his shorts, and Burkhard saw a large bruised area on his upper right thigh. C. said the marks were not on his leg earlier that day and that they were "from the belt." He did not fall or injure himself while running away.

Sheriff Deputy Gregory Tougas interviewed appellant the same day. She admitted she had "disciplined" C. with a belt that day, by hitting him four

---

[2] Unless otherwise indicated, the events described herein took place in 2012.

times. She said C. "went down on the ground and grabbed his legs," as "kind of a little tantrum that he pulls sometimes." Appellant "always [sat] down for prayer," before disciplining C., to seek the "wisdom and understanding to . . . give proper discipline." She admitted that she had bruised C. "more than a year" before May 29 and said it had been "probably about six months" since Timothy M. last bruised him. She further stated she saw small bruises on C.'s arms and legs that he acquired while playing dodge ball on the weekend. When Tougas showed her the May 29 photographs of C.'s right leg, appellant said, "that's definitely not what I saw." Tougas asked if she had caused those marks with the belt. She answered, "I would say yes, because [unintelligible] seen it anywhere else." She admitted that C.'s injuries were "pretty severe" but said she was "not necessarily surprised," because he bruised easily. She also said, "I know my force was hard. I mean I know my swing[] on him was hard." Tougas asked if she thought she had gone "overboard." She answered, "Absolutely."

Appellant told Tougas that over the prior two years, she usually disciplined C. by hitting his bottom with a belt. She felt bad that he was scared of her and scared to go home. She said she "would be happy to get into [] anger management" or even "remove [herself] from the home so C. could return home with Timothy M. She told Tougas that Timothy M. physically and sexually abused her.

*Prior Uncharged Incidents*

C. testified appellant spanked him badly "many times" before May 29. He testified that on one occasion, she and Timothy M. "traded off" hitting him with belt that had studs imbedded in leather. That was "probably the worst" spanking of his life.

C. testified about another occasion when appellant "grabbed a stick from the outside" when she could not find a belt. She hit him with the stick at least 10 times before Timothy M. brought her a belt. She hit C. at least as many times

3

with the belt as she had done with the stick, and left "severe bruising and welts" on his body.

Appellant testified at trial. On May 29, she found C. playing on the computer when she returned home after 11:00 a.m. She prayed about it and decided it was better to discipline C. herself than wait for Timothy M. C. was wearing a long shirt and baggy shorts. She told him to turn around and pull down his shorts. She held his left arm and used a belt to spank "his bottom" four times. She did not use any "extra force" or spank him on his right side. C.'s left side faced her as she spanked him. He dropped to the floor, crying and yelling after the fourth spank. She tried to console him, but C. ran away.

Appellant further testified that two days before May 29, on Sunday, evening, she heard Timothy M. spank C. Before the May 29 incident, appellant had spanked C. on just one other occasion. A few months before May 29, she "swatted [C.] on his bottom" with her hand.

During trial, appellant admitted having told Tougas that she had bruised C. during an incident where "he was moving around when [she] was hitting him," but explained that was a false statement. Her statement to Tougas that Timothy M. had not left bruises on C. for "about six months" was also false. Although appellant told Tougas she had caused the bruises on C. on May 29, she actually meant that she felt responsible for the abuse Timothy M. inflicted upon C. Appellant testified that Timothy M. was physically and sexually violent to her throughout their marriage, which humiliated her, but she felt that she "deserved it." Timothy M. made her stay in the room with him while he disciplined C., and she was uncomfortable because sometimes it was too much but she would not say anything and felt responsible "for what was happening."

Justin Ellis testified that he babysat C. for a weekend in late May. During the weekend they played dodge ball at a trampoline park.

4

DISCUSSION

*Lesser Included Offense Instruction*

Appellant contends that the trial court committed prejudicial error by failing to instruct the jury that battery is a lesser included offense of felony corporal injury to a child.[3] Respondent counters that appellant invited any error, or waived this issue, by advising the court that she did not want a lesser included instruction. Invited error aside, we conclude that the lack of a lesser included offense instruction is harmless.

The trial court does not have a duty to instruct on a lesser included offense if there is no substantial evidence in support of it. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) The court may refuse the instruction where the evidence shows that if the defendant is guilty, he is guilty of the greater offense. (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.) We independently review the court's ruling in this regard. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

When interviewed by Tougas on May 29, appellant said it had been "probably about six months" since Timothy M. had last bruised Christoper. Upon seeing the photograph of C.'s severely bruised leg, appellant admitted that the bruises were "definitely not" what she saw before. She further told Tougas that she "would say" she had caused C.'s bruises with the belt; that his injuries were "pretty severe;" she knew"[her] force was hard;" and that she "absolutely" went overboard. At trial she repudiated or diminished these statements by testifying she actually meant that she felt responsible for injuries that Timothy M. had inflicted upon C. She testified further that she heard Timothy M. spanking C. with a belt on May 27, and that her May 29 statement that Timothy M. had not bruised C. for six months was false.

---

[3] Battery (§ 242) is a lesser included offense of felony corporal injury of a child (§ 273d). (*People v. Sargent* (1999) 19 Cal.4th 1206, 1220; CALCRIM No. 822 [Inflicting Physical Punishment on Child].)

5

Based on the evidence, if the jury had accepted the defense that Timothy M. rather than appellant injured C., it would not convict her of battery; it would acquit her. Thus, even if the trial court erred by failing to instruct jurors that battery is a lesser included offense, the error is harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Breverman* (1998) 19 Cal.4th 142, 165 [failure to instruct on lesser included offense in noncapital cases is subject to *Watson* standard of harmless error review].)

*Propensity Evidence Instruction*

Appellant claims that the trial court erred by giving the jury a propensity evidence instruction which fails to define reasonable discipline. We disagree.

The trial court has a duty to correctly instruct the jury "on the general principles of law relevant to the issues raised by the evidence." (*People v. Najera* (2008) 43 Cal.4th 1132, 1136.) We apply the de novo standard of review in determining whether jury instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

The court instructed the jury regarding propensity evidence, with a modified version of CALCRIM No. 852, which provides in relevant part: "The People presented evidence that the defendant committed domestic violence/abuse that was not charged in this case. Domestic violence includes abuse committed against a child or stepchild of the defendant. [¶] Abuse means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. [¶] . . . If the People have not met this burden of proof, you must disregard this evidence entirely."

Immediately before reading the propensity instruction, the court instructed jurors with two instructions that use and define the reasonable discipline

6

concept.  In describing the elements of the charged corporal injury upon a child offense, the court instructed the jury that the prosecution must prove that "when the defendant acted, she was *not reasonably disciplining a child.*"  (CALCRIM No. 822, italics added.)  The court also instructed the jury with the following version of CALCRIM No. 3405:  "A parent or guardian or stepparent is not guilty of inflicting physical punishment upon a child if she used justifiable physical force or another justifiable method to discipline a child.  [¶]  Physical force is justifiable if a reasonable person would find that the punishment was necessary under the circumstances, and that the physical force or method used was reasonable."

Appellant claims that because the trial court used a propensity evidence instruction which failed to define the concept of reasonable discipline "there was a substantial danger that the jury misused propensity evidence."  We disagree.  Although a propensity instruction which repeats the reasonable discipline concept provided to jurors in other instructions might be helpful in some circumstances, it was not "vital to the jury's ability to analyze the evidence" here.  (*People v. Najera*, *supra*, 43 Cal.4th at p. 1139.)  The propensity evidence instruction guided jurors concerning the correct use of evidence of uncharged acts of domestic violence.  It explained that domestic violence includes "abuse committed against a child."  (CALCRIM No. 852.)  The instruction also defined such abuse.  Immediately before giving the propensity evidence instruction, the court gave the jury instructions which correctly explain the use and definition of reasonable discipline.  (*Ibid*; CALCRIM No. 3405.)  With such instructions, it is unlikely that jurors would confuse uncharged abuse with reasonable discipline, or misuse propensity evidence.  The court expressly instructed the jury that "[s]ome words or phrases used during this trial have legal meanings that are different from their meanings in everyday use.  These words and phrases will be specifically defined in these instructions.  Please be sure to listen carefully and follow the definitions that I give to you."  (CALCRIM No. 200.)  We presume that jurors

7

understand and follow the court's instructions.  (*People v. Mills* (2010) 48 Cal.4th 158, 200.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


8

Nancy L. Ayers, Judge

Superior Court County of Ventura

_____


Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.