Filed 10/10/22  P. v. Isaacs CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D079414 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 16CR-066230) |
| KAYVON JERMAINE ISAACS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Dan Detienne, Judge.  Judgment of conviction affirmed; sentence vacated and remanded for resentencing.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Warren Williams and Christopher P. Beesley, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Kayvon Jermaine Isaacs of murder (Pen. Code,[1] § 187, subd. (a); count 1), carjacking (§ 215, subd. (a); count 2), assault with a firearm (§ 245, subd. (a)(2); count 3), and misdemeanor child endangerment (§ 273a, subd. (b); count 4) as a lesser included offense to felony child endangerment. It found true allegations that as to count 1, Isaacs personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subd. (d)), and with respect to the count 2 carjacking and count 3 assault that Isaacs personally used a firearm (§ 12022.5, subd. (a)). The court sentenced Isaacs to a total term of 50 years to life plus 19 years on the felonies and a concurrent 6 months on the misdemeanor. The sentence consists of 25 years to life for the count 1 first degree murder plus 25 years to life for the firearm use allegation; a nine-year upper term for the count 2 carjacking plus 10 years for the firearm use allegation; and a four-year upper term for the count 3 assault with a firearm plus 10 years for the firearm use allegation, stayed under section 654.

Isaacs contends his conviction for misdemeanor child endangerment is not supported by substantial evidence. He further asks this court to remand for resentencing under recently-enacted laws that (1) encourage courts to impose the lower term where a defendant was under 26 years old at the time of the offense (Assembly Bill No. 124); (2) restrict the trial court's discretion to impose an upper term unless aggravating factors have been found by the jury or stipulated to by the defendant (Senate Bill No. 567) and (3) grant courts discretion to choose which term to impose as an unstayed count when applying section 654 (Assembly Bill No. 518). We agree Isaacs is entitled to

---

[1] Undesignated statutory references are to the Penal Code.

resentencing and remand for that purpose, but otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2016, Isaacs was living in his parents' home with his girlfriend, D.B. and their children, including their infant. At the time, the infant was two months old and was not walking or talking. Isaacs and D.B. had ordinary arguments, but Isaacs at times became jealous of D.B.'s interactions with other men on social media. They also argued about Isaacs's trust issues with D.B. regarding their relationship.

One day that month, Isaacs shot D.B. in the head at close range, killing her. Isaacs's younger brother J.S. was napping after school when he awoke to a loud noise and heard their mother scream. Isaacs's then 16-year-old sister also heard a gunshot and saw Isaacs leave the bedroom in a hurry, trying to shove something into his pants. She entered the bedroom and saw D.B. lying face down with blood around her. Isaacs's brother B.V. also heard a loud bang and his mother scream out Isaacs's name, then glimpsed Isaacs running toward the front door. B.V. saw their mother run toward the front door after Isaacs. B.V. went to Isaacs and D.B.'s room, where he saw their infant sitting in the middle of their bed about five or six feet from D.B., who was lying on the floor face down. The adult-size bed took up the majority of the bedroom. B.V. did not observe blood on the infant or on the infant's clothing, nor did he observe injuries or any indication the infant was in pain. Due to the cramped space in the bedroom where D.B. was found, first responders had to remove D.B. to another room of the house to perform life-saving measures.

Later that evening, B.T. was the victim of a carjacking by a male who demanded her keys and threatened her with a gun. Police later found Isaacs

in B.T.'s vehicle, which he had crashed into a parked police van outside a police station. Isaacs had shot himself in the shoulder. Technicians collected a .380-caliber semi-automatic handgun from the vehicle's floorboard as well as a fired .380-caliber cartridge case from the bedroom where D.B. was killed. The gun was in proper working order, though it required extra manual help to reset the trigger.

An investigating police officer interviewed J.S. and B.V. after the murder. J.S. told the officer that the day before the shooting, he saw Isaacs pacing back and forth and say, "I'm going to kill that bitch." J.S. told the officer that a week before the shooting, he saw Isaacs in possession of a small semi-automatic handgun. B.V. told the officer that Isaacs had accused D.B. of infidelity and that Isaacs had made statements about hurting himself. Isaacs's sister observed Isaacs acting strangely during the two weeks before the murder, talking to himself and pacing back and forth several times a day for minutes at a time. B.V. observed that in the months leading up to the murder, Isaacs would sometimes act paranoid, once or twice saying he heard footsteps on the roof late at night.

A pathologist testified that D.B.'s gunshot wound was above her right eye, and the wound showed both soot and stippling, which are pinpoint abrasions around the wound's entry from gunpowder. According to the pathologist, the presence of both soot and stippling indicated the gun's muzzle was anywhere from a half inch to one foot away from the victim. There was no exit wound.

## DISCUSSION

### I. *Sufficiency of Evidence of Misdemeanor Child Endangerment*

The jury was instructed that to convict Isaacs of misdemeanor child endangerment under section 273a, subdivision (b), the People were required

to prove that "[t]he defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered" and "[t]he defendant was criminally negligent when he caused or permitted the child to be endangered."[2] The jury was instructed that a person acts with criminal negligence when "[h]e . . . acts in a reckless way that is a gross departure from the way an ordinarily careful person would act in the same situation; . . . [t]he person's acts amount to disregard for human life or indifference to the consequences of his or her acts; [and] . . . [a] reasonable person would have known that acting in that way would naturally and probably result in harm to others."

Isaacs contends the evidence is insufficient to support his conviction for misdemeanor child endangerment, particularly the element of criminal negligence. Though he acknowledges it is criminally negligent to discharge a firearm in a manner that could result in injury or death to an innocent bystander, he maintains no authority suggests it is criminally negligent to discharge a firearm when someone is present nearby but not "down range" from the shot. Isaacs argues "[a] risk of potential harm from being struck by a spent casing or a ricochet is not the sort of injury sufficient to impute criminal negligence," and thus he "was only criminally negligent if he fired in a direction that could have struck [the child]." According to Isaacs, because the evidence showed he shot D.B. from between one-half inch to one foot

---

[2] Section 273a, subdivision (b) provides: "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."

5

away from her head and the child was five or six feet away, there is no evidence of criminal negligence to support his conviction.

Isaacs further argues that even if discharging a firearm in a child's vicinity could support the element of criminal negligence, there is no evidence that his conduct could have harmed the child. He maintains that while the prosecutor speculated that a spent casing or ricochet might have hit the child, no witness testified about ejected casings and their trajectory, distance, or momentum or about conditions that would result in a bullet ricochet, including how close a person would need to be to the point of impact.

A. *Standard of Review*

The test for evaluating a challenge to the sufficiency of the evidence is deferential. (*People v. Flores* (2020) 9 Cal.5th 371, 411.) The reviewing court asks " 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We must 'view the evidence in the light most favorable to the People' and 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Ibid.*)

" 'The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court[,] that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citation.] Reversal for

6

insufficient evidence is warranted only when it appears that under no hypothesis whatsoever is there sufficient evidence to support the jury's verdict." (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1086.)

B. *Legal Principles*

Section 273a, subdivision (b) " 'encompasses a wide variety of situations and includes both direct and indirect conduct.' " (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1168, quoting *People v. Burton* (2006) 143 Cal.App.4th 447, 454.) As Isaacs acknowledges, the crime requires proof of criminal negligence. (*People v. Deskin* (1992) 10 Cal.App.4th 1397, 1402.) "Criminal negligence as applied to section 273a means " ' "the defendant's conduct must amount to a reckless, gross or culpable departure from the ordinary standard of due care; it must reach such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life." ' " (*Ibid*.) "A finding of criminal negligence is made by applying an objective test of whether a reasonable person in the defendant's position would have been aware of the risk involved." (*Id.* at p. 1403; see *People v. Sargent* (1999) 19 Cal.4th 1206, 1215.)[3]

---

[3]   In *People v. Sargent, supra,* 19 Cal.4th 1206, the court clarified that when a defendant's conduct involved the direct infliction of unjustifiable physical pain or mental suffering on a child, criminal negligence is not an element of the offense. "Rather, the defendant must have a mens rea of general criminal intent to commit the proscribed act." (*Id.* at p. 1224.) *Sargent* went on to hold that "the trier of fact must determine whether the infliction of the unjustifiable physical pain or mental suffering on a child was under circumstances or conditions likely to produce great bodily harm or death. If so, the crime is punishable as a felony. If not, it is punishable solely as a misdemeanor." (*Ibid*.) In reaching its holding, *Sargent* implicitly disapproved the broad statement in *People v. Deskin, supra,* 10 Cal.App.4th 1397 and other cases that section 273a "is a criminal negligence statute." (*Sargent*, at p. 1219.)

In *Bernal*, the Court of Appeal found substantial evidence to support a misdemeanor child endangerment conviction where two methamphetamine pipes were found in a home with a young child and infant. (*Bernal*, *supra*, 42 Cal.App.5th at p. 1168.) The circumstances—"keeping and using methamphetamine in a home with a six-year-old and a one-month-old"—met the element of "placing children in a situation where their health may be endangered." (*Ibid*.) In *Bernal*, it was not necessary for the Court of Appeal to discuss whether the children had access or were close to the drug paraphernalia; it was the mere presence and use by the parents that was enough to place the children in danger.

As in *Bernal*, *supra*, 42 Cal.App.5th 1160, evidence that Isaacs shot D.B. in a bedroom where his two-month-old infant was mere feet away in the same room was enough to permit the jury to conclude he had "willfully cause[d] or permit[ted the infant] to be placed in a situation where his or her person or health may be endangered." (§ 273a, subd. (b).) The misdemeanor offense does not require evidence of circumstances or conditions "likely to produce great bodily harm or death." (*Ibid*.; see *People v. Sargent*, *supra*, 19 Cal.4th at p. 1215; *People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980.) Concededly, there is no evidence indicating precisely where D.B. was in the room when she was shot, whether she was standing or sitting in a position where the infant could have been in the line of fire. But firing a semi-automatic handgun—even with the trigger reset issue—in a room anywhere near a defenseless infant is extremely dangerous, grossly reckless conduct. It is necessarily a situation where the child's person or health may be endangered, even absent testimony that the child was in the line of fire or in a position to be struck. The mere fortuity that the bullet did not exit D.B's

8

skull, or that the infant was not otherwise physically harmed, does not exonerate Isaacs from his conduct.

## II. *Sentencing Issues*

Isaacs asks us to remand for resentencing given various ameliorative changes in the law, which he asserts, and the People concede, apply to his nonfinal judgment. As we will explain, due to Issacs's youth at the time of the offense, remand for resentencing is appropriate under section 1170 with respect to his upper term, thus we need not decide whether the remaining changes in the law warrant resentencing since Isaacs may present on remand arguments as to any sentencing issue. (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425; accord, *People v. Gerson, supra*, 80 Cal.App.5th at p. 1096; *People v. Jones* (2022) 79 Cal.App.5th 37, 44.)

Isaacs was 25 years old at the time of his offenses and received upper term sentences on the counts 2 and 3 convictions and gun enhancements. At sentencing, the court indicated its intent to sentence him to the maximum permitted under California law.[4] Pointing to these circumstances, Isaacs

---

[4] In sentencing Isaacs, the court stated in part: "In terms of striking the gun enhancement, the [section] 12022.53[, subdivision] (d) as to count 1, and [section] 12022.53[, subdivision] (b) as to count 2, I do have the power to strike those under . . . section 12022.53[, subdivision] (h) . . . . However, I will note that the defendant has prior convictions, weapons-related convictions. He has a prior felony conviction for being a felon in possession of a firearm from 2011, he has a prior conviction for being a felon in possession of ammunition from 2014, and not only did he use the gun against [D.B.], he used a gun against [B.T.] during the carjacking, and he used a gun against himself, at the end, in front of the police station in [Los Angeles]. That is an act of violence. And because of those prior convictions, and because of the use of a gun in those three situations, I don't think it's appropriate for this Court to strike the gun enhancement as to count 1 or count 2 or count 3, although I will be staying count 3. [¶] I do believe, given the nature of this crime, and the factors in aggravation that I outlined, the lack of factors in mitigation, and the specifics I just mentioned, that the defendant should be sentenced to

9

contends Assembly Bill No. 124 and Senate Bill No. 567, both effective January 1, 2022, require a remand to allow the trial court to exercise its discretion with regard to the upper terms.[5]

Under new section 1170, when three possible terms of imprisonment may be imposed for a crime, the trial court may only impose the upper term "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the

---

the California State Prison for the maximum time that I can sentence him allowed under the laws of the State of California."

[5]   In *People v. Gerson*, this court explained the amendments to section 1170:  "During the 2021-2022 legislative term, the Legislature introduced three bills proposing changes to section 1170 in a variety of ways.  (Assembly Bill [No.] 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (Stats. 2021, ch. 719, § 2), and Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3).)  The three bills were approved by the Governor and filed with the Secretary of State on October 8, 2021.  Senate Bill No. 567 bears the highest chapter number and is presumed to be the last of the three approved by the Governor.  (Gov. Code, § 9510.)  To the extent there are conflicts between the three bills, Senate Bill No. 567 takes precedence." (*People v. Gerson*, *supra*, 80 Cal.App.5th at p. 1074, fn. 2, citing *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.)  In *Gerson*, we referred to Assembly Bill No. 124 rather than Senate Bill No. 567 for ease of discussion, noting "the bills are not in conflict and the changes at issue in this appeal were introduced by Assembly Bill [No.] 124 . . . ." (*Gerson*, at p. 1074, fn. 2.)  We do so here as well.  In a separate argument that we need not address given our disposition, Isaacs relies on Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) which amended section 654 to permit the court to choose the lesser punishment where an act is punishable by either a lesser or a greater punishment.

jury or by the judge in a court trial." (§ 1170, subd. (b)(2); *People v. Lopez* (2022) 78 Cal.App.5th 459, 464.)

Section 1170 also now contains "a presumption in favor of a low prison term when a defendant is under 26 years of age at the time of the offense." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Specifically, the court is required to impose the lower term if the defendant's youth "was a contributing factor in the commission of the offense[.]" (§§ 1170, subd. (b)(6)(B), 1016.7, subd. (b) [defining a "youth" as "any person under 26 years of age on the date the offense was committed"].) If the presumption applies, the court may nevertheless impose a middle or upper term if "the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice . . . ." (§ 1170, subdivision (b)(6)(B); see *People v. Gerson*, *supra*, 80 Cal.App.5th at p. 1095.) "Even where the presumption does not apply because there is no evidence that the circumstances listed in paragraph (6) are present, the trial court retains discretion to impose the lower term." (*Gerson*, at p. 1095, citing § 1170, subd. (b)(7).)

We agree the amendments of Assembly Bill No. 124 apply retroactively to Isaacs's conviction, which was not final at the time they became effective. (See *People v. Gerson, supra,* 80 Cal.App.5th at p. 1095; *People v. Flores, supra*, 73 Cal.App.5th at p. 1039.) Because Isaacs was 25 years old at the time of the offenses, the trial court is now required to examine whether his age "was a contributing factor in the commission of the offense" that would require imposition of the lower term. (§ 1170, subd. (b)(6).) It must exercise its discretion further as to aggravating and mitigating circumstances so as to decide whether imposition of the lower term would be contrary to the interests of justice. (*Ibid*.)

As stated, the People concede the amendments apply to Isaacs's judgment.  However, they argue remand for resentencing is unnecessary. They point to the lower court's express intent to impose the maximum punishment possible under California law, and maintain that because the record contains evidence on which the court could rely in imposing an upper term—namely evidence of Isaacs's prior convictions proven by certified court records—"it is obvious what the trial court would do on remand, and there is no need to expend judicial resources for resentencing."  They argue this reasoning applies even though Isaacs was 25 years old at the time of the offenses, as "the trial court found that there were no mitigating circumstances justifying a downward departure," pointing to its decision not to strike the greater firearm enhancement in favor of a lesser firearm enhancement.  According to the People, even if section 1170's amendments had been in place at the time of Isaacs's sentencing, "the record demonstrates the trial court would have imposed the same sentence [and] [b]ecause there is a clear indication on this record of what the trial court would have done— impose the maximum sentence possible—there is no need to remand this case for resentencing."

At the time the court sentenced Isaacs, it had no reason to make, and Isaacs had no basis to seek, an express finding that youth was a contributing factor to his commission of the offenses.  " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' "  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Flores*, *supra*, 9 Cal.5th at p. 431.)  A court unaware of the scope of its discretion " 'can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.]  In such circumstances, [our

12

Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez*, at p. 1391; see also *Flores*, at pp. 431-432; *People v. Banner* (2022) 77 Cal.App.5th 226, 242; *People v. Windfield* (2021) 59 Cal.App.5th 496, 530.)

We disagree the record contains a clear indication what sentencing decisions the trial court would have made if it was bound by the new requirements of Assembly Bill No. 124, making remand futile. That the court declined to strike the firearm enhancements given Isaacs's prior convictions (all of which were committed when Isaacs was under the age of 26) does not reflect a finding for all purposes. The court did not consider Isaacs's age at all in its sentencing discussions and the probation report did not identify it as a mitigating factor in the offenses. In our view, the Legislature's emphasis on the importance of the defendant's age and the presumption in favor of the low term could affect the court's exercise of its discretion. (Cf. *People v. Gutierrez, supra*, 58 Cal.4th at p. 1391 [removal of presumption in favor of life without parole for certain juvenile offenders affected scope of trial courts' discretion, requiring remand; "we cannot say with confidence what sentence [the courts] would have imposed absent the presumption"].) We decline to speculate what the court here would have done in sentencing Isaacs if it were aware of the presumption and the possibility that it may account for Isaacs's age as a mitigating factor in deciding whether upward departure from the presumptive term is warranted.

We therefore vacate Isaacs's sentence. On remand, the trial court may fully resentence him, incorporating new legislative changes. (*People v.*

13

*Gerson*, *supra*, 80 Cal.App.5th at p. 1096.) We express no opinion as to how the court should exercise its discretion on remand.

DISPOSITION

Isaacs's sentence is vacated and the matter is remanded for resentencing in accordance with this opinion. In all other respects, the judgment is affirmed.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

14